Leslie B. COMBS II, Plaintiff-Appellee,

v.

UNITED STATES of America, Defendant-Appellant.

No. 79–3737.

United States Court of Appeals, Sixth Circuit.

Argued June 16, 1981.

Decided July 17, 1981.

Rehearing Denied Sept. 23, 1981.

See also D.C., 490 F.Supp. 19.

James F. Cook, Asst. U. S. Atty., Lexington, Ky., Will E. McLeod, Atty., Tax Division, U. S. Dept. of Justice, M. Carr Ferguson, Hilbert Rothenberg, Gilbert E. Andrews, Richard Perkins, Washington, D. C., for defendant-appellant.

Charles R. Hembree, Philip E. Wilson, Kincaid, Wilson, Schaeffer & Hembree, Lexington, Ky., for plaintiff-appellee.

Before LIVELY, KEITH and MERRITT, Circuit Judges.

MERRITT, Circuit Judge.

This is a suit for the refund of $28,575.80 in federal income taxes, plus deficiency interest of $5,513.96 paid by taxpayer Combs for the year 1969. The appeal raises a "collapsible corporation" question under § 341 of the Internal Revenue Code. After a jury verdict was rendered in favor of the government, the District Court at first denied taxpayer's motion for judgment notwithstanding the verdict but then reversed itself and entered judgment for the taxpayer, 490 F.Supp. 22. We believe that the jury verdict was correct and that the District Court erred in setting it aside.

Under § 341 of the Internal Revenue Code, a corporation "formed" by its shareholders not for long term investment but "for the purchase of property" with a view to the sale of its stock "before the realization . . . of a substantial part of the taxable income to be derived from such property" is considered "collapsible" and the gain realized by the shareholders on the disposition of their stock is taxed as ordinary income. The purpose of this provision is to prevent a taxpayer from converting ordinary income into capital gain by using the corporate device to effect a sale of income-producing property immediately prior to the realization of income taxed at ordinary income rates.

The primary issue here is whether taxpayer's Kentucky corporation—the main asset of which was a 24-unit Miami Beach apartment house—purchased the apartment building in order to profit from the sale of the individual units as cooperative apartments through the conduit of a Florida non-profit corporation. If that was the purpose of the purchase and the intent of taxpayer in forming the Kentucky and Florida corporations, the Kentucky corporation must be treated as a "collapsible corporation" under § 341 of the Internal Revenue Code and taxpayer Combs must pay ordinary income rates on his gain from the subsequent sale of his stock of the corporation to the Florida non-profit co-op corporation. If, however, the acquisition by the Kentucky corporation was for investment purposes rather than sale of individual units to customers through the non-profit conduit, the taxpayer would pay capital gain rates on the sale of stock.

Taxpayer and his brother-in-law, David M. Trapp, are horse breeders and businessmen residing in Lexington, Kentucky. During the winter horse racing season, they often went to Florida with other horse breeders. They stayed at the 24-unit Vista Shores Apartments at Miami Beach, the apartment building in Bal Harbour which gives rise to this case. Early in 1968 the taxpayer was approached by three acquaintances who wanted him to join them as partners in the purchase of the apartment building for the purpose of converting it into a cooperative housing unit. They caused a wholly-owned corporation to enter into an agreement to purchase the building for $225,000. In order to convert the apartment building into co-op units, Florida law requires a non-profit corporation. Such a corporation, Vista Shores, Inc., was established by taxpayer and his partners. The deal fell through, however, when two of the partners failed to supply the necessary financing. Prior to the failure of the deal, taxpayer made serious efforts to sell individual apartment units to potential customers. For example, on March 19, 1968, and

April 5, 1968, taxpayer wrote numerous letters to friends of his in the horse racing business in an attempt to sell them a co-op apartment. After setting forth the prices for each of the apartments he wrote that "we are now in the process of selling off the apartments and turning it into a co-op."

After the deal among the partners fell through, the owner offered to sell the apartment building to taxpayer. On November 26, 1968, taxpayer and his brother-in-law purchased the apartment building for $250,000, taking title to the apartment in a newly formed Kentucky corporation created for that purpose. Approximately one year later, in October 1969, taxpayer and his brother-in-law sold their stock in the Kentucky corporation for $400,000 to a non-profit Florida corporation set up to operate the cooperative housing venture. The non-profit Florida corporation was obligated to make payments for the stock to taxpayer as each co-op was sold. After taxpayer's Kentucky corporation bought the building in 1968, he continued to attempt to sell the individual cooperative apartment units, sending out letters and contacting prospective purchasers, informing them that "at long last we have gotten the problems pertaining to our purchase of the Vista Shores Apartments solved," and "we are going to co-op the building."

At trial both taxpayer and his brother-in-law testified to the jury that they purchased the apartment building "as an investment" and that they originally intended to operate the building as a rental business and did not intend to sell off the units. There was conflicting evidence on this question. The parties agreed on the proper question under § 341 to be submitted to the jury: whether the Kentucky corporation and the taxpayer held the building for investment or "primarily for sale to customers in the ordinary course of a trade or business." After two days of trial, the jury returned a special verdict in favor of the government, finding that the apartment building was held primarily for sale to customers in the ordinary course of business.

In reviewing a judgment n. o. v. in a case involving the question whether an option on land was a capital asset or property sold in the ordinary course of business, this Court stated that "[v]iewing the evidence in th[e] light [most favorable to the non-moving party], the grant of a judgment n. o. v. was proper only if the evidence ... was such that a reasonable person could reach only one conclusion." *Philhall Corp. v. United States*, 546 F.2d 210, 214 (6th Cir. 1976). In the present case, the District Court changed its mind and granted taxpayer a judgment n. o. v. apparently because it erroneously concluded that the taxpayer or his brother-in-law were not engaged generally as dealers in real estate independently of their ownership and sale of the Miami Beach apartment house. This is not the central issue. The central issue is the one the parties and the Court put to the jury: whether the taxpayer engaged in the business of selling off these apartment units individually—an ordinary-income-producing activity—and just before realizing the income sold the building to a corporation in a manner that sought to recover at capital gain tax rates the fruits of taxpayer's work. The issue turned on taxpayer's intent, *Philhall Corp., supra*, at 214–15, an issue on which the evidence was in conflict. The jury resolved the conflict, and its verdict should not have been set aside. The District Court should restore and enter judgment on the jury verdict.

We do not believe the District Court erred, however, in its original decision to allow the taxpayer to use an income-averaging method of computing his tax, and the case is remanded to the District Court for determination of the correct amount of the refund due taxpayer after considering the necessary adjustment in the computation of the tax after income averaging. See *United States v. Andrews*, 302 U.S. 517, 523–24, 58 S.Ct. 315, 318–19, 82 L.Ed. 398 (1938).

Accordingly, the judgment of the District Court is reversed and the case remanded for proceedings consistent with this opinion. Each party will bear his own costs.