Daniel M. KELLEY; Nancey N. Kelley, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

No. 87–7413.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted April 7, 1989.

Decided June 7, 1989.

---

Arthur H. Boelter and John J. White, Jr., Boelter, Silver & Gale, Seattle, Wash., for petitioners-appellants.

Doris D. Coles, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before PREGERSON, BOOCHEVER and NOONAN, Circuit Judges.

---

BOOCHEVER, Circuit Judge:

The Kelleys appeal decisions of the Tax Court that the statute of limitations did not bar an adjustment to their 1980 tax return, and that they were not entitled to have their deficiency determined by use of income averaging because they did not raise the issue in their petition. We reverse on both issues.

## I. STATUTE OF LIMITATIONS

The taxpayers, a husband and wife, filed a joint return for 1980. The husband was a fifty percent shareholder in Holly Homes Company (HHC), a subchapter S corporation. On their 1980 tax return the taxpayers deducted $163,933 as their share of a loss passed through HHC.

The Commissioner obtained an extension of the statute of limitations from the taxpayers. The Commissioner obtained an extension from HHC for HHC's 1979 tax year. This extension expired November 30, 1983. The Commissioner did not obtain an extension from HHC for its 1980 tax year.

The Commissioner issued a Notice of Deficiency to the taxpayers on August 14, 1984. This Notice disallowed $140,625 of the losses from HHC's 1980 tax return. The taxpayers petitioned the Tax Court, contending that the statute of limitations barred the adjustment of the loss passed through HHC. The Tax Court ruled that the statute of limitations did not bar the adjustment. The parties agree that if the statute of limitations for an adjustment based on a disallowance of an item on an S corporation's tax return applies at the corporation level the adjustment was barred, whereas if it applies at the taxpayer level, the adjustment was valid.

## DISCUSSION

■ We review the Tax Court's conclusions of law de novo. *Vukasovich, Inc. v. Commissioner,* 790 F.2d 1409, 1413 (9th Cir.1986).[1]

---

**1.** In *Vukasovich* we noted that there had been some ambiguity in the Circuit regarding wheth- er any special deference is due decisions of the

With certain exceptions an S corporation does not pay taxes. Instead, it files an informational return and its shareholders pay taxes on its income. *E.g., Jacobsson v. Commissioner,* 87 T.C.M. (P–H) 559 at 3004 (1987). If the corporation is determined not to be a valid S corporation it will be subject to taxation at the corporate level. Certain capital gains and a minimum tax on tax preference items may also subject the S corporation to taxation. *Id.*

Section 6501[2] provides the statute of limitations for assessment of income tax: "Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed...." I.R.C. § 6501.

Section 6037 requires S corporations to file returns each year and provides that "[a]ny return filed pursuant to this section shall, for purposes of chapter 66 (relating to limitations), be treated as a return filed by the corporation...." I.R.C. § 6037. The parties dispute the meaning of this section. The Commissioner argues that this provision means that the statute of limitations is triggered by the filing of the informational return *only* if it is determined that the corporation itself owes a tax because of an invalid election or because one of the exceptions applies. According to this interpretation, items on the informational return can be adjusted at any time, and passed through to the shareholder as long as the limitations period applicable to the shareholder's individual return has not expired. The Tax Court accepts the Commissioner's position. *See Jacobsson, supra; Leonhart v. Commissioner,* 68 T.C. M. (P–H) 98 (1968), *aff'd on other issues,* 414 F.2d 749 (4th Cir.1969). The taxpayers contend that the provision means that no adjustments can be made based on any item on the S corporation's return after the statute of limitations has run on the corporation's return, even if the adjustment would create a tax deficiency only at the shareholder level.

In interpreting a statute we look first to its language. *E.g., Hughes Air Corp. v. Public Utilities Comm'n,* 644 F.2d 1334, 1337 (9th Cir.1981). Section 6037 says that a return filed by an S corporation must be treated, for purposes of the statute of limitations, as a return filed by a regular corporation. With certain inapplicable exceptions a corporation's income tax return cannot be questioned after three years from the date the return is filed. *See* I.R.C. § 6501. A literal construction of section 6037 would similarly seem to bar adjustments to an S corporation's return after the three year period.

The shareholder can defend against such an adjustment only by resort to the corporation's books and records. The statute of limitations exists, in part, so that after some time persons can be confident that their affairs are closed and they can dispose of old records. An S corporation should be entitled to the same finality as others, yet if any of the shareholders has given an extension of the statute of limitations to the IRS the shareholder's ability to defend against the adjustment would depend upon whether the corporation has retained the records.

Barring adjustment of a shareholder's return based on an item from an S corporation's return when the statute has run on the corporate return should not prejudice the IRS. As demonstrated in this case, the Service can obtain an extension of the statute of limitations if it determines that it needs more time to determine the accuracy of the corporate return. A requirement that the Service obtain an extension of the statute of limitations from the S corporation serves to place the corporation on notice that it should retain the materials necessary to substantiate its return.

The Tax Court in this case relied on *Leonhart,* which justified its position as follows:

Tax Court. We concluded that special deference is inappropriate. 790 F.2d at 1413.

**2.** All discussions of codes will refer to the Internal Revenue Code of 1954 as amended and effective during the years in issue. The substan-

tial amendments made in 1982 are not applicable to the 1980 tax year in question here. *See* Pub.L. No. 97–354, § 4(a), 96 Stat. 1691 (1982) (codified at I.R.C. §§ 6241–6245).

It is only where the election of the corporation is for some reason determined to have been ineffective that section 6037 is intended to provide that the information return filed by the corporation will be treated as a corporate return for the purposes of the statute of limitations. That is clearly indicated by that portion of the Senate Report on the Technical Amendments Act of 1958, which added section 6037, relating to that section, which reads as follows:

IV. TECHNICAL EXPLANATION
Section 68. Election of Certain Small Business Corporations

. . . .

*Annual returns required*

Notwithstanding the fact that an electing small-business corporation is not subject to the tax imposed by chapter 1 of the 1954 Code, such corporation must make a return for each taxable year in accordance with new section 6037 as added by subsection (c) of section 68 of the bill. Such return will be considered as a return filed under section 6012 for purposes of the provisions of chapter 66, relating to limitations. Thus, for example, the period of limitation on assessment and collection of any corporation tax found to be due upon a subsequent determination that the corporation was not entitled to the benefits of subchapter S, will run from the date of filing of the return required under the new section 6037. Senate Report No. 1938, 85th Cong., 2d Sess. (1958), 1958–3 C.B. 922, at 1147.

*Leonhart*, 68 T.C.M. (P–H) 98 at 515 (footnote omitted). Treasury Regulation 1.6037–1(c) essentially mirrors the legislative history quoted in *Leonhart*. We disagree with the Tax Court's reading of this legislative history. This Senate Report does not indicate that section 6037 means the S corporation's return is treated as a corporate return only if the corporation itself is determined to owe tax. While it refers to an unqualified corporation as an example, it leaves open whether the statute of limitations applies in other situations. If Congress had intended the example to swallow the language of the text, Congress

could easily have written the statute to provide that the period of limitations will run from the date of filing of the return required under section 6037 *only* in instances of a subsequent determination that a corporation was not entitled to the benefits of subchapter S.

In addition to relying on the reasoning of *Leonhart*, the Tax Court accepted the following argument: "Because a valid S corporation is not liable for income taxes, there is no 'amount' to be assessed under section 6501(a) and therefore no occasion for a period of limitations on assessment with respect to the corporation's return. Thus, the statute of limitations must be applied at the shareholder level." This reasoning, however, is not dispositive of the issue. The language of section 6501 ("the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed") indicates that the tax imposed (in the case of an S corporation the tax owed by the shareholder on account of the S corporation's activities) must be assessed within 3 years after the filing of *some* return, but does not indicate whether the relevant return is the taxpayer's or the corporation's.

■ We hold that the IRS may not adjust a shareholder's return based on an adjustment to an S corporation's return when the statute of limitations has run on the S corporation's return. We reverse the Tax Court's determination that the adjustment was not barred by the statute of limitations.

## II. THE INCOME AVERAGING ELECTION

In 1981, before the Notice of Deficiency was sent, the taxpayers had filed an amended return for 1980 electing to use income averaging. The Notice of Deficiency listed four adjustments to the 1980 return, including the disallowance of the HHC loss discussed above. No mention was made of income averaging. On the attached Statement of Income Tax Changes the amount of tax due was calculated. The

form shows this amount was derived from the "Tax tables".

The Commissioner argues that the taxpayers should have known that the Commissioner was not using income averaging to derive this amount, because when income averaging is used the amount is derived from "Schedule TC" and not from the "Tax tables". Thus, the Commissioner argues, the taxpayers should have raised the income averaging issue in the petition to the Tax Court.[3]

In their petition the taxpayers objected to the Commissioner's adjustment of the four items. Neither the petition nor the Commissioner's answer raised the issue of income averaging. Only the HHC issue remained in dispute at the time of the trial. After a trial on stipulated facts the Tax Court resolved this issue in favor of the Commissioner, and withheld entry of its decision pursuant to Tax Court Rule 155 to allow the parties to submit computations of the deficiency in accord with the Tax Court decision.

The Commissioner submitted a computation made without income averaging. The taxpayers then filed a computation made pursuant to their election to use income averaging, and also filed a motion in the alternative to amend their petition to raise the issue of income averaging. The Tax Court held that income averaging was a new issue that could not be raised in a Rule 155 proceeding and that the evidence needed to determine that issue was not in the record. The Court denied permission to amend the petition on the basis that it was a new issue not raised previously because of "what is apparently an oversight by petitioners' counsel" and it was untimely as it was filed eleven months after submission of the case and almost eight months after the opinion was filed.

## DISCUSSION

The Tax Court determined that income averaging was a new issue that could not be decided in a rule 155 proceeding.

Rule 155(c) provides:

Any argument under this Rule will be confined strictly to consideration of the correct computation of the deficiency, liability, or overpayment resulting from the findings and conclusions made by the Court, and no argument will be heard upon or consideration given to the issues or matters disposed of by the Court's findings and conclusions or to any new issues. This Rule is not to be regarded as affording an opportunity for retrial or reconsideration.

■ The Tax Court's decision refusing to decide an issue on the basis that it is a new issue is reviewed for abuse of discretion. *See Bankers Pocahontas Coal Co. v. Burnet,* 287 U.S. 308, 313, 53 S.Ct. 150, 151, 77 L.Ed. 325 (1932); *Commissioner v. Estate of Long,* 304 F.2d 136, 141 (9th Cir.1962).

In *Paccar, Inc. v. Commissioner,* 849 F.2d 393 (9th Cir.1988) the petitioner offered, in a Rule 155 proceeding, a computation different from the Commissioner's, contending that the Commissioner's determination failed to take into account the petitioner's inventory accounting method. The Tax Court held that this was a new issue that could not be raised for the first time in a Rule 155 proceeding. The Ninth Circuit affirmed "[b]ecause the resolution of the matter would have required the tax court to consider new evidence not presented at the original proceeding." *Id.* at 399–400. Thus, a review of the Tax Court's decision that an issue is not appropriate for consideration in a Rule 155 proceeding requires a determination whether consideration of the issue would require the introduction of new evidence.

■ In *Combs v. United States,* 490 F.Supp. 19, 21 (E.D.Ky.1978), *aff'd on this issue,* 655 F.2d 90, 92 (6th Cir.1981) the court held that:

[n]o new fact questions are presented by an election to income average, but rather a change in the method of tax computation to be employed in finally determin-

**3.** The Commissioner does not contend that there was a substantive basis for challenging the taxpayers' election to use income averaging.

ing the tax due for the year in question.... The defendant's position that by seeking to income average, the taxpayer is opening the returns for all five years to review by the Commissioner as to *each* item of income and expense is without merit. Nothing in [the statutes or regulations] indicates that by so electing the taxpayer is opening up his previous returns for audit or recomputation of taxable income.

490 F.Supp. at 21 (footnote and internal citations omitted) (emphasis in original). On the other hand, the Tax Court in this case and in *Cloes v. Commissioner,* 79 T.C. 933, 937 (1982) held that in some cases additional evidence is necessary to determine the amount of tax due using income averaging. We need not determine whether the Tax Court abused its discretion when it refused to consider income averaging in the Rule 155 proceeding, since we hold that the Tax Court abused its discretion in refusing to allow an amendment of the petition to raise this issue.

The Tax Court had discretion to allow an amendment of the petition under Tax Court Rule 41(a), which provides that "leave shall be given freely when justice so requires." We review the denial of leave to amend for abuse of discretion. *See Bankers Pocahontas Coal,* 287 U.S. at 313, 53 S.Ct. at 151; *Long,* 304 F.2d at 141.

In *Polizzi v. Commissioner,* 247 F.2d 875 (6th Cir.1957), the taxpayer filed a joint return, but his wife failed to sign it. The Commissioner issued a Notice of Deficiency which listed an adjustment based on a partnership distribution. The tax computation was based on the tax rates for an individual return, rather than for a joint return, but the Notice did not explicitly challenge the joint filing status of the taxpayer. The taxpayer petitioned the Tax Court, objecting to the adjustment of the partnership distribution. The Tax Court resolved this issue favorably to the taxpayer.

The taxpayer then filed a computation of tax based on a joint filing status and the Commissioner filed a computation of tax based on an individual status. The Tax Court held that the joint filing status of the taxpayer was a new issue that could not be raised for the first time in the computation proceeding. *Id.* at 876.

The Sixth Circuit agreed that the filing status of the taxpayer was a new issue inappropriate for consideration in a computation proceeding. *Id.* at 878. It held, however, that the Tax Court should have conducted a further hearing on the issue of the taxpayer's filing status. The filing status of the taxpayer was an underlying issue that should have been raised in the pleadings. There was "much justification," however, for the taxpayer's failure to raise it in the petition, since there was no indication that the taxpayer realized the Commissioner was challenging his filing status, nor was this ever called to his attention. *Id.* "The deficiency notice did not state that his joint basis of computation was disapproved, nor did the Commissioner's answer put the petitioner upon notice that his claim in this respect was not accepted. It is not too late for the pleading to be amended and for this issue to be heard and decided by the Tax Court." *Id.* "[W]here it appears that a further hearing would be promotive of justice, the taxpayer should be given the opportunity of amending his pleadings and of offering evidence to show that he suffers through a wrongful determination of his tax liability." *Id.* Thus the court remanded to the Tax Court for further proceedings.

This case is indistinguishable from *Polizzi.* Because the Notice of Deficiency did not provide adequate notice that the Commissioner was challenging the income averaging election, there was "much justification" for the taxpayers' failure to raise it in the petition. As soon as the taxpayers had notice that the Commissioner did not intend to respect their income averaging election they moved to amend their petition to raise the issue. The Tax Court abused its discretion by denying leave to amend.

We remand to the Tax Court for amendment of the petition and a hearing to determine the issues raised by the taxpayers' election to use income averaging. In addition, the tax liability, if any, must be deter-

mined based on allowance of the loss passed through HHC.

REVERSED AND REMANDED.