**ESTATE OF Jean Simon Andre AR-NAUD, Deceased; Emile Furlan, Executor, Petitioners–Appellants,**

v.

**COMMISSIONER INTERNAL REVENUE SERVICE, Respondent–Appellee.**

No. 88–7479.

United States Court of Appeals, Ninth Circuit.

Argued and Submitted Dec. 15, 1989.

Decided Feb. 7, 1990.

A. Thomas Murphy, San Francisco, Cal., for petitioners-appellants.

Regina S. Moriarty, Kim Stanley, Tax Div., Dept. of Justice, Washington, D.C., for respondent-appellee.

Before SNEED, HUG and LEAVY, Circuit Judges.

HUG, Circuit Judge:

Appellant–Taxpayer, the Estate of Jean Simon Andre Arnaud, appealed from an adverse decision issued by the Tax Court. Arnaud was, at the time of his death, a nonresident alien domiciled in France. The

issue on this appeal is whether a tax treaty between France and the United States ("French Tax Treaty")[1] entitles the Estate of Arnaud ("Taxpayer") to compute the estate tax utilizing the unified credit of $62,800, which is applicable to the estates of citizens or residents of the United States. The Tax Court held that Taxpayer was only entitled to the unified credit applicable to nonresident aliens and that the French Tax Treaty did not require otherwise. We affirm.

## I. FACTS

The decedent, Jean Simon Andre Arnaud, and his surviving wife, Elaine Arnaud, were citizens and residents of France. Included in the decedent's gross estate was a parcel of real property located in California which was owned by the decedent and his wife as community property.

For purposes of this appeal, we need not delve into the details of the original or amended return or the deficiency notice. Taxpayer claimed a marital deduction of $17,417 and a unified credit of $62,800. Taxpayer is entitled to claim the marital deduction under the French Tax Treaty. The only issue before us is whether Taxpayer is entitled to claim the unified credit of $62,800, applicable to United States citizens and residents, or is limited to the unified credit of $3,600, applicable to nonresident aliens. This is a matter of construction of the French Tax Treaty. The Tax Court's construction of the French Tax Treaty is a question of law, which we review de novo. Kelley v. C.I.R., 877 F.2d 756, 757 (9th Cir.1989).

## II. DISCUSSION

### 1. The I.R.C.

At the time of decedent's death, the Internal Revenue Code ("I.R.C.")[2] imposed federal estate tax on property of United States citizens and residents, as well as on testamentary transfers by nonresident aliens of property located in the United States. The I.R.C. contained separate provisions for domestic estates and for nonresident alien estates. The taxation of domestic estates was governed by Subchapter A of Chapter 11 of the I.R.C. (§§ 2001–2056). The taxation of nonresident alien estates was governed by Subchapter B of Chapter 11 of the I.R.C. (§§ 2101–2108).

There were three key differences between the Subchapters. First, citizens or residents were entitled to a marital deduction for qualifying property passing from the decedent to his or her surviving spouse. See Subchapter A § 2056(a). No marital deduction was allowed to the estate of a nonresident alien. Second, the estates of nonresident aliens were taxed at a lower rate than domestic estates. Third, citizens or residents were entitled to a unified credit of $62,800 against their estate tax liability. See Subchapter A § 2010(b). Nonresident aliens were entitled to a unified credit of only $3,600. See Subchapter B § 2102(c).

### 2. The French Tax Treaty

The parties dispute whether the French Tax Treaty changes the application of Subchapters A and B.

Article 12(1) of the Treaty provides that each country "shall impose its tax, and shall allow exemptions, deductions, credits, and other allowances, in accordance with its laws." Article 11(2) of the Treaty modifies this general rule:

> In the case of an individual who was domiciled in France there shall, for purposes of determining the United States tax, be allowed the same marital deduction in effect on the date of signature of this Convention, as if such individual

**1.** The formal name of the French Treaty is: The Convention Between the United States of America and the French Republic for the Avoidance of Double Taxation and the Prevention of Fiscal Evasion With Respect to Taxes on Estates, Inheritances, and Gifts (October 1, 1980), 32 U.S.T. 1935, T.I.A.S. No. 9812.

**2.** References to the Internal Revenue Code or Code are to the Internal Revenue Code of 1954 (26 U.S.C.) as amended and in effect during 1982. The 1954 Code has been redesignated as the "Internal Revenue Code of 1986" by section 2 of the Tax Reform Act of 1986, Pub.L. No. 99–514, 100 Stat. 2085.

were domiciled in the United States, and in such a case the tax rates applicable if the decedent or donor had been domiciled in the United States shall apply. If the tax determined without regard to the preceding provision of this paragraph is lower than that computed under the preceding provision, the lower tax shall apply.

Taxpayer contends that Article 11(2) permits a nonresident to compute estate tax liability by: (1) utilizing the marital deduction; (2) using the higher tax rates; and (3) using the increased unified credit applicable to domestic estates ($62,800), if such a computation produces a lower tax than the application of the provisions of Subchapter B of the I.R.C. As noted, Subchapter B allows no marital deduction, lower tax rates, and a smaller unified credit ($3,600).

Taxpayer argues that if he elects to claim the marital deduction, as allowed by Article 11(2) of the Treaty, he becomes subject to the higher tax rates imposed by Subchapter A § 2001 of the Code, and that this election automatically entitles him also to claim the $62,800 unified credit allowed the "estate of every decedent" by Subchapter A § 2010 against the tax imposed by section 2001. Simply, Taxpayer construes the Treaty as permitting the estate of a French nonresident to be taxed as the estate of a nonresident under Subchapter B or as the estate of a United States citizen under Subchapter A, whichever is lower.

Here, application of the domestic unified credit of $62,800 completely eliminates the Taxpayer's estate tax liability. If the Taxpayer computed liability under Subchapter B, there would be a liability of approximately $13,000.

Both the Commissioner and the Tax Court disagreed with Taxpayer's interpretation of the French Tax Treaty. The Tax Court concluded that the only relevant effect of the Treaty provisions is that the estate of a nonresident alien is permitted to claim the marital deduction as if it were a domestic estate, at the cost of being subject to higher tax rates. We agree with the Tax Court's interpretation.

The Treaty does not, explicitly or implicitly, provide the estate of a French nonresident with the option of having its tax computed as if it were the estate of a United States citizen or resident. If the drafters intended such an outcome, they would have chosen language expressing that intention. Moreover, neither the Senate Executive Report accompanying the Treaty nor the Treasury Department's explanation of the Treaty mentions or infers that the purpose of the Treaty was to permit French alien estates to be taxed as domestic estates. *See, e.g., Karmun v. C.I.R.*, 749 F.2d 567, 569–70 (9th Cir.1984).

We agree with the Tax Court's interpretation of the French Tax Treaty. Article 12(1) of the Treaty states that each country "shall impose its tax, and shall allow exemptions, deductions, credits, and other allowances, in accordance with its laws." The I.R.C. "laws" are completely separate for the estates of citizens or residents (Subchapter A) and the estates of nonresident aliens (Subchapter B). Accordingly, under Subchapter B, the estate of a nonresident alien is entitled to a unified credit of only $3,600. *See* § 2102(c). Article 11(2) of the Treaty merely creates an exception for French residents with respect to *marital deductions*. Article 11(2) holds that "*tax rates*" shall be applied as if the decedent had been domiciled in the United States, if Taxpayer chooses to accept the marital deductions. However, Article 11(2) is silent about the application of "*credits*." If the drafters had intended for "credits" to be allowed as if French aliens were United States citizens or residents, they would have used the word "credit," as they did in Article 12(1). In Article 12(1) it is clear tax rates, exemptions, and credits all have separate meanings. Article 11(2) provides an exception specifically for marital deductions and states that accepting the marital deduction will affect the tax rates, not the credits.

### 3. *Estate of Burghardt*

Taxpayer also argued that this case is similar to *Estate of Burghardt v. Commissioner*, 80 T.C. 705 (1983), *aff'd without published opinion*, 734 F.2d 3 (3d Cir.

1984). In *Burghardt*, the phrase "specific exemptions" in an Italian Treaty was read to include unified credits. *Id.* at 717.

The Tax Court persuasively distinguished *Burghardt* from the instant case. We agree with the Tax Court that Taxpayer's reliance on *Burghardt* is misplaced. First, the cases deal with two different Treaties, each with quite different language. *Id.* at 707 n. 8. Next, in *Burghardt*, ambiguity was found to exist in the Treaty's wording, with regard to the term "specific exemptions." *Id.* at 707. Here, no ambiguity exists with the wording of the French Tax Treaty. Moreover, there have been no changes in the structure of the Federal estate tax since the French Tax Treaty was signed that requires us to interpret the provision, in light of changed circumstances, to avoid rendering it a nullity. In *Burghardt*, there had been a change in circumstances. *Id.* at 713–18. For these reasons, we find *Burghardt* and the instant case distinguishable.

## III. CONCLUSION

The Tax Court correctly held that Taxpayer was limited to the $3,600 unified credit allowed by the I.R.C. to estates of nonresident aliens. Article 11(2) of the French Tax Treaty cannot reasonably be construed as overruling the I.R.C. and allowing Taxpayer to claim the domestic unified credit of $62,800.

AFFIRMED.