United States Court of Appeals,

Fifth Circuit.

Nos. 90–4629 to 90–4632, 90–4847 to 90–4853, 90–4881 and 91–4497.

Charles T. GREEN and Kay E. Green, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Robert WHITE and Jean R. White, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Robert WHITE and Jean R. White, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Gene C. ELKINS and Louise Elkins, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

R. Talley and Carolyn MELTON, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Norman C. WAY and Mary K. Way, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Bobby L. and Ramona A. DAVIS, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

James R. and Elizabeth J. GRAVES, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Don C. and Audrey N. QUAST, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Elizabeth C. MAYFIELD, Petitioner–Appellant,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Jack E. and Jeanne BLANCO, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Mike and Sandra Ann KANE, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

Martin BRODY and Jerrilyn Brody, Petitioners–Appellants,

v.

COMMISSIONER OF INTERNAL REVENUE, Respondent–Appellee.

June 22, 1992.

Appeals from the United States Tax Court.

Before GOLDBERG, DUHÉ, and BARKSDALE, Circuit Judges.

GOLDBERG, Circuit Judge:

The statute of limitations in section 6501 of the Internal Revenue Code declares that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a).[1] A Subchapter S corporation makes a return for a taxable year and, more than three years after the S corporation files its return, the Commissioner of Internal Revenue seeks to assess a deficiency against a shareholder of that S corporation for certain losses passed through from the S corporation, within three years after the shareholder filed its return. Must the Commissioner

---

[1]Unless otherwise indicated, all citations to the Internal Revenue Code refer to the Internal Revenue Code as amended and effective during the years involved in this appeal.

act within three years from the filing of *both* the shareholder's individual income tax return and the return of the Subchapter S corporation, or can the Commissioner determine the shareholder's tax liability within three years from the filing of the shareholder's return? We hold that the statute of limitations must be open only as to the individual taxpayer for the Commissioner to adjust the shareholder's tax liability based on the disallowance of losses passed through to the shareholder from the S corporation.

## I. BACKGROUND

Martin and Jerrilyn Brody owned ten percent of the stock of a qualified, duly electing Subchapter S corporation called Delta Selectune, Inc. during the taxable years 1977, 1978 and 1979. The Brodys also owned ten percent of the stock of another qualified, duly electing Subchapter S corporation called St. Louis Selectune, Inc. during the taxable years 1978 and 1979. The Delta and St. Louis Selectune Subchapter S corporations engaged in the business of selling cassette and eight-track audiotapes of music selected by customers from compositions in the record library of Franklin Industries, Inc. The Brodys limited their participation in the corporations to these passive investments. The Brodys did not know the names of the other shareholders or the names of the directors of the two S corporations.

Delta reported losses on its return for its taxable year 1977, while both of the Subchapter S corporations reported losses on their returns for their taxable years 1978 and 1979. The Brodys, as shareholders of the Subchapter S corporations, claimed deductions for their *pro rata* share of these losses on their individual income tax returns for the years 1977, 1978 and 1979. Both Delta and St. Louis ceased operations and closed their offices in 1981.

Complying with a request by the Internal Revenue Service, the Brodys entered into written agreements with the Service extending the statutes of limitations for assessing tax against them for the years 1977, 1978 and 1979 indefinitely. Neither of the S corporations agreed to extend the

statute of limitations for any of the taxable years involved in this case. The Commissioner of Internal Revenue subsequently determined deficiencies in income tax against the Brodys for the taxable years 1977, 1978 and 1979, disallowing the deductions of the Brody's *pro rata* share of the losses incurred by the Subchapter S corporations. In December of 1986, before the extended statute of limitations for the Brodys expired, but after the statutes of limitations for the S corporations expired, the Commissioner issued a notice of deficiency to the Brodys for these years.

The Brodys petitioned the United States Tax Court for a redetermination of the deficiencies determined by the Commissioner. The tax court tried the case on stipulated facts, deciding an issue of law: whether the expiration of the statute of limitations as to a Subchapter S corporation barred the assessment of deficiencies against individual taxpayers attributable to the disallowance of losses claimed by the taxpayers as shareholders in the Subchapter S corporations. *Brody v. Commissioner,* 61 T.C.M. (CCH) 1993, 1994 (1991). The tax court followed its decision in *Fehlhaber v. Commissioner,* 94 T.C. 863 (1990) (reviewed by the tax court), *aff'd,* 954 F.2d 653 (11th Cir.1992), and held that since the statute of limitations did not bar the assessment, the Commissioner timely issued the notice of deficiency. *Brody,* 61 T.C.M. at 1995. In reaching this decision, the tax court rejected the reasoning of the Ninth Circuit in *Kelley v. Commissioner,* 877 F.2d 756 (9th Cir.1989). The taxpayers appeal, arguing that the statute of limitations must be open as to both the individual taxpayer and the Subchapter S corporation and urging this Court to embrace the reasoning of the Ninth Circuit as articulated in *Kelley.*[2] We engage in a *de novo* review of the tax court's conclusion of law. *Texas Learning Technology Group v. Commissioner,* 958 F.2d 122, 124 (5th Cir.1992) (citations omitted). We choose to follow the persuasive reasoning of the Eleventh Circuit in *Fehlhaber* and the Second Circuit in *Bufferd* and thus affirm the tax court.[3]

_____

[2]Although this Court did reference the *Kelley* opinion in an unpublished decision, *Tom Brown, Inc. v. United States,* 883 F.2d 71 (5th Cir.1989), we expressly stated that "we need not and do not now pass on the precise issue presented in *Kelley.*" Today we confront the issue decided in the *Kelley* case for the first time.

[3]We do not reach the second issue presented by the Appellants concerning certain of the taxpayers' motions to vacate because we decide the statute of limitations issue in favor of the

## II. DISCUSSION

A truncated description of how Subchapter S corporations operate under the Internal Revenue Code helps clarify the facts of this case. Congress adopted Subchapter S in 1958. Subchapter S generally exempts an "electing small business corporation" from all corporate income taxes. William M. Richardson & Samuel P. Starr, *Task Force Report on Taxable and Tax–Free Acquisitions Involving S Corporations,* 45 Tax Law. 435, 437 (1992). A Subchapter S corporation, then, unlike a Subchapter C corporation, usually does not pay taxes. Rather, Subchapter S of the Internal Revenue Code treats the S corporation as a " "pass through' entity under which income and losses flow directly to the shareholders." *Fehlhaber,* 954 F.2d at 654 & n. 2 (citation omitted). The S corporation files an information return, which reports the corporation's gross income, deductions, the names and addresses of its shareholders, distributions to the shareholders, and the shareholders' *pro rata* share of each item of the corporation for the taxable year. *Id.* at 654 & n. 3 (citing Treas.Reg. § 1.6037–1(a) (1959)). It is the shareholders who include their distributive "share of the S corporation's income, gain, losses, deductions, and credits on their own personal returns." *Id.* at 654 & n. 4 (citation omitted).

In our interpretation of the Internal Revenue Code, we "adhere to the plain language of the law unless "literal application of [the] statute will produce a result demonstrably at odds with the intentions of its drafters." *Federal Deposit Ins. Corp. v. Meyerland Co. (In re Meyerland Co.),* 960 F.2d 512, 516 (5th Cir.1992) (en banc) (quoting *Griffin v. Oceanic Contractors, Inc.,* 450 U.S. 564, 102 S.Ct. 3245, 3250, 73 L.Ed.2d 973 (1982)). Section 6501(a) of the Internal Revenue Code provides that "the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed." 26 U.S.C. § 6501(a). The plain language of section 6501 thus establishes a three year period of limitations "for assessing any tax imposed under the Code." *Fehlhaber,* 954 F.2d at 654.

---

Commissioner.

The taxpayer and the Commissioner can, however, contract to extend the three-year statute of limitations period. An exception to the limitations period arises when the Commissioner and the taxpayer consent in writing—before the three-year period expires—to an extension of time for the assessment of tax. 26 U.S.C. § 6501(c). The Brodys executed a "Special Consent to Extend the Time to Assess Tax" for the taxable years 1977, 1978 and 1979. These Consents permitted the Commissioner to assess the income tax due on the return for a particular year until the agreement ended. Each agreement, by its terms, continued in effect until ninety days after revocation of the Consent by the Brodys. The extension of the period of limitations does not alter our discussion: it works no change in our analysis whether the Commissioner asserted the deficiency either within three years after the Brodys filed a particular return or, as here, within the time allowed under the extension for that taxable year. The parties do not dispute that the Commissioner issued the notice of deficiency for the taxable years 1977, 1978 and 1979 *before* the agreements extending the time to assess the income tax due on the returns for those years terminated. Our inquiry remains the same: Does the filing of the taxpayer return or the Subchapter S return commence the running of the statute of limitations?

Section 6501(a), the focus of our statutory analysis, is quite simple, yet curiously inexplicit. Section 6501(a) mandates that any tax imposed under the Internal Revenue Code must be assessed within three years after "*the return* was filed." The issue in this case reduces to the conspicuous question: Three years after *which* return was filed? Although the plain language of the provision establishes a three year limitations period, Congress neglected to specify whether—when the Commissioner attempts to assess a deficiency against that taxpayer for adjustments to the taxpayer's distributive share of items passed through from the S corporation—the period begins when the S corporation files its return or when the shareholder files his or her personal income tax return. *See Kelley,* 877 F.2d at 759 (Section 6501 "does not indicate whether the relevant return is the taxpayer's or the corporation's.").

The Brodys argue that the statutory period for assessing deficiencies in income tax from the shareholders of an S corporation that relate to adjustments in items passed through from a Subchapter S corporation commences when the S corporation files its return. Since the S corporations filed their returns in 1978, 1979 and 1980, the Brodys claim that the three-year statute of limitations expired "long before the Commissioner sent the 1986 notice of deficiency" to them. The Commissioner contends that the deficiencies were asserted within the period of limitations because it is the taxpayer's return, not the Subchapter S corporation's return, that triggers the running of the period of limitations. And, because the Commissioner asserted the deficiencies within the period allowed under the extensions signed by the Brodys, section 6501 does not bar the assessment. We agree with the Commissioner.

In agreeing with the Commissioner, we find ourselves in accord with the Eleventh Circuit, *Fehlhaber,* 954 F.2d at 655, and the Second Circuit, *Bufferd v. Commissioner,* 952 F.2d 675, 677 (2nd Cir.1992), *petition for cert. filed,* —— U.S.L.W. —— (U.S. Mar. 31, 1992) (No. 91–4099). We are persuaded by the Eleventh Circuit's emphasis on the nature of the return filed by the Subchapter S corporation in interpreting the meaning of section 6501(a). As explained above, the S corporation ordinarily pays no corporate income tax; rather, "its income is taxed directly to its shareholders under personal income tax rates." *Fehlhaber,* 954 F.2d at 655 (citation omitted). The return of the S corporation contains information about the corporation, including its gross income and deductions, and its shareholders, including the names and addresses of its shareholders, distributions to the shareholders, and the shareholder's *pro rata* share of each item of the corporation for the taxable year. *Id.* at 654 & n. 3; *see* 26 U.S.C. § 6037. The return of the S corporation typically does not reflect any corporate tax liability, so the return filed by the Subchapter S "is merely an *informational* return." *Fehlhaber,* 954 F.2d at 655 (emphasis added). Each shareholder reports her *pro rata* share of these S corporation items, using this information to assist in calculating her federal income tax on her individual income tax return. The information relayed by the S corporation's return about its shareholders falls far short of that needed to compute an individual

shareholder's tax liability. *Id.* The Subchapter S corporation's return obviously does not reveal each shareholder's adjusted basis in the corporate stock, "nor does it show [the shareholder's] income, losses, deductions, and credits from other sources." *Fehlhaber,* 94 T.C. at 869. For these reasons, the information return filed by the S corporation cannot support the assessment of a tax against the *entity,* for "the corporation itself is ordinarily not subject to any tax," or the *shareholder,* for "the return lacks sufficient information to determine the individual's tax liability." *Fehlhaber,* 954 F.2d at 655.

When Congress revised Subchapter S in 1982, it described the provisions in effect at the time.[4] The Senate Report explained that

> [u]nder present law, a taxpayer's individual tax liability is determined in proceedings between the Internal Revenue Service and the individual whose tax liability is in dispute. Thus, any issues involving the income or deductions of a subchapter S corporation are determined separately in administrative or judicial proceedings involving the individual shareholder whose tax liability is affected. Statutes of limitations apply at the individual level, based on the returns filed by the individual. *The filing by the corporation of its return does not affect the statute of limitations applicable to the shareholders.*

S.Rep. No. 640, 97th Cong., 2d Sess. 25 (1982), *reprinted in* 1982 U.S.C.C.A.N. 3253, 3275 (emphasis added). We agree with the Eleventh Circuit that this legislative history, although not contemporaneous, supports the conclusion that "the limitations period for assessing a tax liability against a shareholder begins to run from the date that the *individual,* and not the S corporation, files his return." *Fehlhaber,* 954 F.2d at 657 (emphasis added); *see Bufferd,* 952 F.2d at 678 ("[T]he relevant return for determining the statute of limitations is the return of the taxpayer against whom the tax is sought."). *But see Kelley,* 877 F.2d at 759 ("[T]he IRS may not adjust a shareholder's return based on an adjustment to an S corporation's return when the statute of limitations has run on the S corporation's return.").

---

[4]The 1982 amendments to Subchapter S concerning the tax treatment of subchapter S items do not apply to the 1977, 1978 or 1979 taxable years involved in this appeal. *See* 26 U.S.C. §§ 6241–6245 (West 1989).

The expiration of the period of limitations as to the Subchapter S corporations does not preclude the Commissioner from assessing deficiencies attributable to the disallowance of losses passed through from the S corporations to the shareholders. The statute of limitations applicable to the shareholders commences at the time the shareholders file their individual income tax returns. The Commissioner has three years, or, as in this case, an extended period of time pursuant to agreements between the shareholder and the Commissioner, to assess a tax upon the shareholder for S corporation-related items. The Consents signed by the Brodys granted the Commissioner the power to assess tax due on the Brody's 1977, 1978 and 1979 tax returns at the time the Commissioner issued the notice of deficiency. We hold that the Commissioner issued the notice of deficiency within the period of limitations.

The Brodys advance several arguments that militate against commencing the statute of limitations at the time the shareholders file their returns. First, the Brodys contend that our holding promotes unfairness. The Ninth Circuit in *Kelley* expressed a similar concern. *See Kelley,* 877 F.2d at 758. When the IRS seeks to adjust a shareholder's return for items passed through from an S corporation more than three years after the filing of the S corporation's return, the shareholder opposing the adjustment can defend itself "only by resort to the corporation's books and records." *Id.* According to the Ninth Circuit, inimical repercussions would result from a rule construing the words of 6501(a) as referencing the shareholder's return: Either the corporation would bear an onerous obligation to maintain its books and records beyond three years after it files its information return or the shareholder would experience a diminished ability to defend against the adjustment because the corporation had demolished the relevant records. *Cf. id.*

This assertion does not sway our adherence to interpreting the statute of limitations as we do today. First, it is not unfamiliar in the world of tax to have "an individual's income tax return ... dependent on records maintained by another entity." *Fehlhaber,* 954 F.2d at 658 (citing partnership and trust taxation as examples). Second, the rule generally does not impose an undue burden on the

corporation or the shareholder. S corporations, by definition, have only a small number of shareholders. A shareholder can "take the necessary steps to ensure that the corporation preserves the relevant records." *Id.* Such protective steps simply do not constitute an overly oppressive task for the shareholder. *Bufferd,* 952 F.2d at 678. Even if we were to hold that the statute of limitations commenced with the filing of the Subchapter S return, we could issue no guarantee that the corporation would preserve its records until that period expired, just as we cannot assure the shareholder that the corporation will preserve the relevant books and records when the shareholder requests that it do so. In *either* event, the shareholder remains dependent on the corporation to retain the relevant records. We cannot alter this feature of the relationship between the Subchapter S corporation and its shareholders. In 1979, the management of one of the S corporations, Delta, alerted the Brodys to an audit of Delta's 1977 return. Two of the consents to extend the time to assess tax against the Brodys, executed in 1982 and 1983, limited any deficiency assessment to that resulting from, *inter alia,* any adjustment to the Brody's "distributive share of any item of income, gain, loss, deduction, or credit of" Delta and St. Louis. The Brodys do not argue that they took immediate action to ensure that the S corporations safeguarded the books and records needed to support the S corporation items on their individual returns when they learned of potential problems with the pass-through items. *See Bufferd,* 952 F.2d at 678 (citing *Siben v. Commissioner,* 930 F.2d 1034, 1037 (2nd Cir.), *cert. denied,* ―― U.S. ――, 112 S.Ct. 429, 116 L.Ed.2d 449 (1991)). Indeed, the Brodys did not attempt to locate the corporate records for the taxable years 1977, 1978, and 1979 until after receipt of the notice of deficiency in 1986. Finally, we reject any suggestion that we elevate the "perceived unfairness to taxpayers" over our duty to strictly construe in favor of the government a statute of limitation when the petitioner seeks application of the statute so as to bar the rights of the government. *Fehlhaber,* 954 F.2d at 658 (citing *Badaracco v. Commissioner,* 464 U.S. 386, 104 S.Ct. 756, 761, 78 L.Ed.2d 549 (1984)) (quoting *E.I. Du Pont De Nemours & Co. v. Davis,* 264 U.S. 456, 44 S.Ct. 364, 366, 68 L.Ed. 788 (1924)); *see Sage v. United States,* 908 F.2d 18, 24 (5th Cir.1990).

Second, the Brodys forcefully assert that section 6037 of the Internal Revenue Code answers the question posed by section 6501(a). Section 6037 requires that every S corporation file a return each taxable year. 26 U.S.C. § 6037. Furthermore, "[a]ny return filed pursuant to [section 6037] shall, for purposes of chapter 66 (relating to limitations), be treated as a return filed by the corporation under section 6012." *Id.* The Brodys claim that this language in section 6037 supplies a ready answer to the question raised by section 6501: Three years after which return was filed? The "return filed by the corporation."

The answer suggested by the taxpayers ignores one critical part of the final sentence of section 6037. If we treat "any return" filed pursuant to section 6037 as "a return filed by the corporation *under section 6012* " for period of limitations purposes, we must, of course, consult section 6012. Section 6012(a) simply requires that "every corporation *subject to taxation*" file a tax return. 26 U.S.C. § 6012(a) (emphasis added). We read the plain language of 6037 to mean that any information return filed by the Subchapter S corporation pursuant to section 6037 constitutes a tax return filed by the S corporation under section 6012 for limitations purposes—should the S corporation fall into the somewhat extraordinary position of owing tax itself. Both the Eleventh and Second Circuits extensively considered the effect of 6037 on the section 6501 issue. Both courts concluded, as we do, that "[s]ection 6037 provides the limitations period for organizations that file returns as S corporations but are nonetheless required to pay some tax on the organization's income." *Bufferd,* 952 F.2d at 677. "[T]he last sentence in section 6037 does not apply to a subchapter S corporation unless its return establishes that the corporation owes a tax." *Fehlhaber,* 954 F.2d at 656.

Two examples surface in which a corporation that files a return pursuant to section 6037 pays tax directly, rather than merely functioning in its typical role as a pass-through entity. If an S corporation receives certain capital gains, the S corporation itself must pay tax on that income. *Bufferd,* 952 F.2d at 678; *Kelley,* 877 F.2d at 758. Moreover, if a corporation files an S corporation

return, yet was not eligible for treatment as an S corporation, the filing of the return under 6037 triggers the three-year statute of limitations for assessing taxes on the corporation's income. *See Fehlhaber,* 954 F.2d at 656 n. 15 (citations omitted); *Kelley,* 877 F.2d at 758. The legislative history to section 6037 supports this reading of the section's last sentence:

> Notwithstanding the fact that an electing small-business corporation is not subject to the tax imposed by chapter 1 of the 1954 Code, such corporation must make a return for each taxable year in accordance with new section 6037.... Such return will be considered as a return filed under section 6012 for purposes of the provisions of chapter 66, relating to limitations. Thus, for example, the period of limitation on assessment and collection of any corporate tax found to be due upon a subsequent determination that the corporation was not entitled to the benefits of subchapter S, will run from the date of filing of the return required under the new section 6037.

S.Rep. No. 1983, 85th Cong., 2d Sess. 226 (1958), *reprinted in* 1958 U.S.C.C.A.N. 4791, 5014. *But see Kelley,* 877 F.2d at 759 ("While [the Senate Report] refers to an unqualified corporation as an example, it leaves open whether the statute of limitations applies in other situations."). The parties do not dispute that the filing of the Subchapter S corporations' returns commenced the running of the statutes of limitations applicable to the assessment of any corporate tax. Nor do the parties assert that the returns filed by the S corporations for the taxable years involved in this appeal established that the Subchapter S corporations separately owed any tax for those years. The final sentence of 6037 simply does not apply to the facts of this case.

## III. CONCLUSION

For the reasons explained above, we AFFIRM the judgments of the United States Tax Court.