972 F.2d 1337
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
David BRNILOVICH; Diane A. Brnilovich, Petitioners-Appellants,
v.
COMMISSIONER OF INTERNAL REVENUE SERVICE, Respondent-Appellee.
 No. 90-70156.
 United States Court of Appeals, Ninth Circuit.
 Submitted Aug. 18, 1992.*
Decided Aug. 26, 1992.
 
 Before WIGGINS, O'SCANNLAIN and FERNANDEZ, Circuit Judges.
 
 
 1
 MEMORANDUM**
 
 
 2
 David and Diane Brnilovich appeal an adverse judgment of the Tax Court. We have jurisdiction under 26 U.S.C. § 7482, and we affirm.
 
 
 3
 * David Brnilovich, an Arizona attorney, was retained by James and Donna Harlacher to procure certificates of grandfathered water rights on several parcels of property owned by the Harlachers. Subsequently, it became apparent that the title to one thirty-acre parcel in Maricopa County ("the Maricopa land") was in question. The Maricopa land had been deeded by Mrs. Harlacher's mother, Kay Keith, to her then-husband L.B. Keith prior to the date upon which it was deeded to the Harlachers. In April 1984, Brnilovich drafted a legal opinion for the Harlachers stating that L.B. Keith probably held title to the property, but the Harlachers might have a claim to it based on adverse possession.
 
 
 4
 By means of two quitclaim deeds dated August 21, 1984, the Harlachers conveyed their interest in ten acres of the Maricopa land to Brnilovich. He did not record these deeds, nor did the Brniloviches report any income from this transaction on their joint 1984 federal income tax return.
 
 
 5
 On August 22, 1984, Brnilovich instituted a quiet title action in Arizona state court on behalf of the Harlachers against L.B. Keith. The court granted Keith's motion for summary judgment, but prior to entry of judgment the parties reached a settlement. Pursuant to the settlement agreement, the Harlachers paid Keith $200,000 and Keith stipulated to entry of judgment quieting title to the Maricopa land in the Harlachers. The stipulated judgment was entered October 7, 1985.
 
 
 6
 Meanwhile the Harlachers, with Brnilovich's assistance, negotiated a sale of the parcel to third parties. The sale was completed on September 30, 1985. Pursuant to an assignment of proceeds executed by the Harlachers, Brnilovich received $62,771, one-third of the net proceeds, from the escrow. On their 1985 federal income tax return, the Brniloviches characterized this income as a long-term capital gain.
 
 
 7
 The IRS issued a deficiency notice, asserting that the proceeds received from the sale of the Maricopa land should have been treated as ordinary income. The Brniloviches filed a petition in the Tax Court contesting the deficiency. The Tax Court issued a final decision upholding the Commissioner's deficiency determination on January 25, 1990. The Brniloviches timely appealed.
 
 II
 
 8
 We review decisions of the Tax Court on the same basis as bench trials in the district court. Wilcox v. Commissioner, 848 F.2d 1007, 1008 (9th Cir.1988). The Tax Court's findings of fact are entitled to deference, but its conclusions of law and decisions on most mixed questions of fact and law are reviewed de novo. Kelley v. Commissioner, 877 F.2d 756, 757 (9th Cir.1989); Mayors v. Commissioner, 785 F.2d 757, 759 (9th Cir.1986).
 
 III
 
 9
 The Commissioner's determination of deficiency is presumed correct; the party challenging that determination bears the burden of proving otherwise. Roat v. Commissioner, 847 F.2d 1379, 1383 (9th Cir.1988). To carry this burden, the Brniloviches must show that the income they derived from the Maricopa land qualifies for treatment as a capital gain.
 
 
 10
 A capital gain is income derived from the sale or exchange of a capital asset held for more than six months. 26 U.S.C. § 1222(1), (3). A capital asset must be, among other things, "property." 26 U.S.C. § 1221. The controlling issue on this appeal is whether David Brnilovich held a property interest in the Maricopa land for the required six-month period prior to disposition.
 
 
 11
 "In application of federal tax statutes, state law controls in determining the nature of the legal interest the taxpayer holds in the property sought to be taxed. Federal law does not create or define property rights; it merely attaches tax consequences to the interests created by state law." Magneson v. Commissioner, 753 F.2d 1490, 1495 (9th Cir.1985) (citing Aquilino v. United States, 363 U.S. 509, 512-13 (1960)). We must therefore look to Arizona law to determine when Brnilovich acquired a property interest in the Maricopa land.
 
 
 12
 Under Arizona law, a quitclaim deed transfers only the interest of the grantor, whatever that may be. Sprang v. Petersen Lumber, Inc., 798 P.2d 395, 401 (Ariz.App.1990). If the grantor has no interest in the property, the grantee receives none. See id.; Melni v. Custer, 781 P.2d 631, 633 (Ariz.App.1989). To establish that David Brnilovich received a property interest when the Harlachers quitclaimed a portion of the Maricopa land to him, petitioners must show that the Harlachers possessed a property interest in the Maricopa land in August 1984, when the quitclaim deeds were executed.
 
 
 13
 The Brniloviches raise three arguments in support of their claim that the Harlachers had such an interest to transfer. First, they cite the Arizona state court judgment quieting title to the Maricopa land in the Harlachers. Second, they contend that the evidence in the Tax Court showed that the Harlachers had title by adverse possession. And third, they assert that the Harlachers had water rights appurtenant to the land, which were transferred by the quitclaim deed. None of these arguments is persuasive.
 
 
 14
 The Brniloviches contend that the Arizona state court judgment entered October 7, 1986, is res judicata on the question of whether the Harlachers held title to the Maricopa land in August 1984. This argument misconstrues the nature of the stipulated judgment. The judgment did not establish that the Harlachers prevailed on their adverse possession claim, but simply quieted title in them for the future. Babo v. Bookbinder Financial Corp., 551 P.2d 63, 64 (Ariz.App.1976), holding that title acquired by adverse possession vests at the end of the prescriptive period, consequently has no relevance. The Tax Court did not improperly fail to give full faith and credit to the Arizona decision; it properly determined that the Arizona court had not resolved the question of where title to the Maricopa property lay prior to October 1985.
 
 
 15
 The Brniloviches next argue that the quitclaim deeds provide prima facie evidence of good title, and that the Commissioner was required to overcome that evidence. That is simply not the law. As explained above, under Arizona law a quitclaim deed transfers only whatever rights the grantor possessed. The deed alone establishes no more than that the Harlachers transferred their interest, whatever it was, to Brnilovich. It does nothing to meet the Brniloviches' burden of showing that the Harlachers had a property interest to transfer. Nothing in Merrifield v. Merrifield, 388 P.2d 153 (Ariz.1963), is to the contrary. Merrifield holds only that a quitclaim deed is sufficient to establish a right of possession in a forcible detainer action, in which inquiry into the merits of title is statutorily prohibited.
 
 
 16
 Nor did the Tax Court err in deciding that the Brniloviches had not proven that the Harlachers had obtained title to the property by adverse possession as of August 7, 1984. The evidence provided to support this theory consisted of Brnilovich's legal opinion letter to the Harlachers, which stated that they might have an adverse possession claim but recommended that they use the land until August 1986 to perfect it, and a 1981 deed from Kay Keith, conveying the land to James Harlacher. Petitioners adduced no factual evidence showing that the Harlachers had met the requirements of adverse possession under Arizona law. On the other hand, considerable evidence tended to show that the Harlachers did not own the Maricopa property in 1984. In a 1969 property settlement, recorded in Maricopa County, Kay Keith quitclaimed all interest in the property to her husband, L.B. Keith. This property settlement predated by twelve years the deed through which the Harlachers acquired the property. Moreover, the Arizona state court initially granted summary judgment in favor of Keith in the Harlachers' quiet title action, rejecting their adverse possession claim. Only after payment of $200,000 to Keith by the Harlachers was a consent judgment entered quieting title in the Harlachers.
 
 
 17
 Finally, the Brniloviches look to the grandfathered water rights for the Maricopa property to support their claim. Apparently, the Harlachers obtained a certificate of water rights to the property in 1982.[1] Petitioners argue that these water rights constitute a valuable property right, and that a one-third interest in them was transferred to Brnilovich by means of the two quitclaim deeds. In their view, the transferred water rights provided Brnilovich with a property interest in the Maricopa land as of August 1984.
 
 
 18
 We disagree. Assuming, arguendo, that the Harlachers had a property interest in the water rights at the time they executed the quitclaim deeds, that interest was not transferred to Brnilovich. The deeds recited that the Harlachers quitclaimed to Brnilovich all right, title, and interest in ten acres of the real property together with all appurtenant rights and privileges. If the deed transferred no land, it could not transfer any appurtenant rights. Nor does Arizona Revised Statutes § 45-472(A) assist the Brniloviches. That provision states that: "The owner of an irrigation grandfathered right may convey the right only with the land to which the right is appurtenant." Even assuming that the certificate held by the Harlachers was for an "irrigation grandfathered right" and that they qualified as the "owners" of the right, this statute precluded them from transferring the water right unless they could and did transfer the Maricopa land. The water rights cannot be used to bootstrap a property interest out of the quitclaim deeds.
 
 IV
 
 19
 We conclude that the Tax Court correctly determined that the Brniloviches failed to demonstrate any error in the notice of deficiency.
 
 
 20
 AFFIRMED.
 
 
 
 *
 The panel unanimously finds this case suitable for submission on the record and briefs and without oral argument. Fed.R.App.P. 34(a), Ninth Circuit R. 34-4
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Circuit R. 36-3
 
 
 [1]
 The certificate does not appear in the record, but the Commissioner apparently does not contest the claim that the Harlachers obtained such a certificate. The parties have not informed us of, nor does the record reveal, the nature of the water rights granted