117 T.C. No. 25


UNITED STATES TAX COURT


OLIVER K. ROBINSON AND DEBORAH L. ROBINSON, ET AL.,[1]
Petitioners <u>v</u>. COMMISSIONER OF INTERNAL REVENUE, Respondent


Docket Nos. 4428-98, 4429-98,  Filed December 19, 2001.
            4435-98.


     R determined that certain expenditures
made by P's wholly owned subch. C corporation
(C) constituted constructive dividends to P.
At the time that R mailed a notice of
deficiency to P, the period for assessment of
1992 fiscal year tax with respect to C had
expired, whereas the period for assessment of
1992 tax for P had been extended and had not
expired.  Because the adjustment to P derives
from C's transactions, P contends that C's
period for assessment should govern R's
ability to make a determination and/or assess
tax with respect to P or C.  Sec. 6501(a),

_____

    [1] The following cases have been consolidated for purposes of
trial, briefing, and opinion:  Pak West Airlines, Inc., docket
No. 4429-98; and Career Aviation Academy, Inc., docket No. 4435-
98.

I.R.C., provides the general rule that R has 3 years after the "return" was filed to assess. R contends that the "return" referenced in sec. 6501(a), I.R.C., is the return of the taxpayer for whom the adjustment is being made. Conversely, P contends that the "return" is that of the entity from which the adjustment derives.

Held: In the factual context of this case, the return referenced in sec. 6501(a), I.R.C., is the return of the taxpayer for whom the adjustment is determined and not the return of the entity from or concerning whom the taxpayer has realized an item of income.

Roger M. Schrimp, James F. Lewis, and Steven G. Pallios, for petitioners.

Michael F. Steiner, Julie A. Howell, and Dale A. Zusi, for respondent.

GERBER, Judge: In separate notices of deficiency, respondent determined deficiencies in petitioners' Federal income tax and accuracy-related penalties under section 6662[2] for the 1992, 1993, and 1994 taxable years as follows:

---

[2] Unless otherwise indicated, section references are to the Internal Revenue Code in effect for the taxable years under consideration, and Rule references are to the Tax Court Rules of Practice and Procedure.

|            |      |            | Penalty      |
| Docket No. | Year | Deficiency | Sec. 6662(a) |
|------------|------|------------|--------------|
| 4428-98    | 1992 | $31,319    | $6,264       |
|            | 1993 | 84,739     | 16,948       |
| 4429-98    | 1994 | 79,031     | 15,806       |
| 4435-98    | 1993 | 186,991    | 37,398       |
|            | 1994 | 110,602    | 22,120       |

After concessions,[3] the issues remaining for our consideration are: (1) Whether respondent was barred from determining constructive dividend income for the Robinsons from their wholly owned corporation because the period for assessment of a deficiency in the corporation's income tax had expired; (2) whether the Robinsons are liable for self-employment taxes of $5,928 for 1992 and $4,383 for 1993; and (3) whether petitioners are liable for section 6662 penalties.

## FINDINGS OF FACT

At the time their petitions were filed, Oliver and Deborah Robinson were married and resided in Oakdale, California. The principal place of business of the corporate petitioners, Career Aviation Academy, Inc. (Career), and Pak West Airlines, Inc. (Pak West), was Oakdale, California, at the time their petitions were filed. Career was wholly owned by Mr. Robinson, and Pak West was wholly owned by Mrs. Robinson. Both corporations were entities subject to tax (C corporations). Career reported income on the

---

[3] The parties' stipulations of facts and settled issues are incorporated by this reference.

basis of a fiscal year ending July 31, and Pak West used a fiscal year ending September 30.

During the years at issue, Career's business was divided into two major segments:  (1) Providing air freight, air charter and aircraft leasing services; and (2) purchasing and selling used aircraft and parts.  Pak West came into existence in late 1992 as an air carrier providing air cargo services.

For its fiscal year ending July 31, 1992, Career timely filed its Form 1120, U.S. Corporation Income Tax Return, on October 15, 1992.  The Robinsons also filed a timely Form 1040, U.S. Individual Income Tax Return, for their 1992 calendar year during March 1993.

Sometime during 1995, the Robinsons' 1992 and 1993 returns were selected for audit.  Subsequently, the audit was expanded to include Career and Pak West.  During the audit the Robinsons executed Forms 872, Consent to Extend the Time to Assess Tax, consenting to the extension of the assessment period for their 1992 individual return until December 31, 1997.  No consents to extend were executed for Career with respect to its fiscal year ended July 31, 1992, and the period for assessment for that year expired on October 15, 1995.

Respondent did not issue a notice of deficiency with respect to Career's 1992 fiscal year and, accordingly, Career's questionable items of expense were not disallowed.  On December

9, 1997, respondent issued a notice of deficiency to the Robinsons for their 1992 and 1993 individual income tax years. In that notice, respondent determined that the Robinsons had constructive dividend income of $115,888 and $216,685 that was attributable to Career's fiscal years ended July 31, 1992 and 1993. The constructive dividends were imputed to Mr. Robinson, as 100-percent owner of Career, and derived from various nonbusiness expenses of the Robinsons that were paid by the corporation.[4] Payment of these personal items of the Robinsons was not reported as income by them or as loans to shareholders on Career's books.

Respondent also determined that the Robinsons were liable for self-employment tax in the amounts of $5,928 and $4,383 for 1992 and 1993, respectively. Those adjustments were based on respondent's determination that Mr. Robinson received corporate compensation during 1992 and 1993 ($31,015 in each year) which had not been reported as self-employment income. The Robinsons did report the $31,015 on each of their 1992 and 1993 returns, but reported the amount as income from "forgiveness of debt". Career's books and records do not reflect any specific

---

[4] With the exception of the $39,824 constructive dividend remaining in controversy (which involves payments of the Robinsons' expenses during the first half of Career's fiscal year ended July 31, 1992) the parties have reached agreement regarding the remainder of the Robinsons' constructive dividend issues for 1992 and 1993.

information regarding any debt that might have generated forgiveness of debt income as reported by the Robinsons.[5]

Mr. Robinson, an officer and the sole shareholder of Career, and Mrs. Robinson performed services for Career, but they did not report salary or wage income on their 1992 or 1993 return. Mr. Robinson provided substantial services to the corporation in his capacity as an officer. Because of his expertise as a certified aircraft mechanic and pilot, he was involved in overseeing the day-to-day operation of the aircraft brokerage segment of Career's business. He was personally involved in the inspection, negotiation, and purchase of used aircraft and parts, and he traveled extensively for this part of the business. Mr. Robinson took part in the actual inspection of purchased aircraft and parts. He worked a minimum of 60-70 hours a week for the company.

Mrs. Robinson was involved in the day-to-day administrative details of Career. Along with two others, Mrs. Robinson prepared corporate checks and coded them for posting to the general ledger. She was also responsible for marketing. Most importantly, Mrs. Robinson was the primary dispatcher for the freight and passenger charter activities, including the coordination and readying of the planes and crew for the freight and charter businesses. Although she was also the property

---

[5] Petitioners, on brief, do not attempt to characterize the $31,015 amounts reported for 1992 and 1993 as income from forgiveness of debt. They agree that those amounts are income, but disagree that it is income subject to self-employment tax.

manager for the Robinsons' relatively extensive real estate activity, she nonetheless devoted significant time and effort to her Career responsibilities.

The Robinsons, in their 1992 and 1993 returns, reported income from property management, cancellation of indebtedness, and, in 1992, $10,101 of net earnings from self employment. The self-employment income was attributable to Mr. Robinson's management consulting income in the gross amount of $10,938.

Respondent also determined that the Robinsons were liable for section 6662(a) accuracy-related penalties for their 1992 and 1993 tax years. In particular, the penalties were determined for the substantial understatement of tax under section 6662(b)(2) and (d).

Respondent also issued notices of deficiency to Career for its fiscal years ended July 31, 1993 and 1994, and Pak West for its fiscal year ended September 30, 1994. With respect to Career, respondent determined adjustments regarding items of business income, expenses, and net operating losses, and that the corporation was liable for accuracy-related penalties under section 6662(b) and (d). Similarly, as to Pak West, respondent disallowed various business expenses and also determined that the

corporation was liable for the accuracy-related penalty under

section 6662(b) and (d).[6]

## OPINION

### I.  Whether the Period for Assessment Has Expired

#### A.  Introduction

Respondent determined that the Robinsons had additional income attributable to constructive dividends originating in transactions of a separate taxable corporate entity (Career).[7] Petitioners argue that Career's period for assessment should govern whether respondent may make a timely constructive dividend adjustment.  Petitioners contend that respondent is therefore barred from determining that the Robinsons had a $39,824 constructive dividend for their 1992 tax year because Career's period for assessment had expired for its corresponding corporate fiscal tax year.  Respondent contends that the period for assessment is controlled by the period for assessment determined with regard to the return of the taxpayer under examination and not with regard to the return of the entity from which the adjustment may originate.

Generally, the Commissioner's authority to determine income

---

[6] Except for the accuracy-related penalties, the adjustments for these corporate entities have been resolved by agreement of the parties.

[7] Respondent determined that certain of Career's claimed expenses were expended for the Robinsons' nondeductible personal expenses and constituted constructive dividends to the Robinsons.

tax deficiencies for assessment is statutorily limited to a period ending 3 years after the filing of a taxpayer's return. See sec. 6501(a).[8]  Under section 6501(c)(4), the 3-year period can be extended by written agreement between the taxpayer and the Government.  The statute of limitations is an affirmative defense, and the party interposing it must specifically plead it and carry the burden of showing its applicability.  Rule 142; Adler v. Commissioner, 85 T.C. 535, 540 (1985).  Generally, statutes limiting the assessment and collection of tax are strictly construed in the Government's favor.  Badaracco v. Commissioner, 464 U.S. 386, 391 (1984); Tosello v. United States, 210 F.3d 1125 (9th Cir. 2000).

The dispute between the parties has as its focus the term "return" as it is used in the section 6501(a) phrase "the amount of * * * tax imposed by this title shall be assessed within 3 years after the return was filed".  In the setting of this case, the question is whether the "return" referred to is that of the shareholder or the C corporation.

This Court has consistently held that the relevant "return" for determining whether the period for assessment expired under section 6501(a) is that of the taxpayer with respect to whom the Commissioner seeks to determine a deficiency.  See Lardas v. Commissioner, 99 T.C. 490, 492 (1992) (and cases cited therein).

---

[8] Some of the exceptions to this general rule may be found in sec. 6501(c) and (e).

We have reached that conclusion irrespective of whether the adjustment concerned the transactions of another entity and irrespective of whether that entity was taxable.

Around 1989-90, a conflict arose amongst Federal Courts of Appeals over whether a passthrough corporate entity's or a shareholder's period for assessment controlled the Commissioner's ability to determine a deficiency for an item flowing from the corporation to the shareholder. In Bufferd v. Commissioner, 506 U.S. 523 (1993), the Supreme Court addressed that conflict in the context of a subchapter S corporation and its shareholder. In Bufferd, it was held that adjustments to a shareholder's income are governed by the shareholder's period for assessment.

B.  Caselaw Development

Petitioners and respondent each focus on the Supreme Court's holding in Bufferd v. Commissioner, supra, to support their positions. Respondent contends that Bufferd, even though it involves a shareholder and an S corporation, stands for the general principle that it is the taxpayer's return that controls the assessment period and not the return of the entity from which the adjustment may be derived. Conversely, petitioners contend that Bufferd is distinguishable and applies solely to S corporations and, accordingly, does not control situations where the adjustment involves a shareholder and a C corporation.

The Supreme Court in resolving the circuit conflict held

that

> The Commissioner can only determine whether the
> taxpayer understated his tax obligation and should be
> assessed a deficiency after examining * * * [his]
> return.  Plainly, then, "the" return referred to in
> §6501(a) is the return of the taxpayer against whom a
> deficiency is assessed.  * * *  [Id. at 527.]

To better understand the Supreme Court's holding, we briefly

review pre-Bufferd case development.

Before the conflict amongst the Court of Appeals holdings on

this issue, courts generally followed the principle that a

corporation and its shareholders were separate taxpayers.  See

Moline Properties, Inc. v. Commissioner, 319 U.S. 436 (1943).

That principle held true even where the adjustments to one

taxpayer's income derived from the other taxpayer.

This Court, in the context of a transaction concerning a

beneficiary and a complex trust, held that the return of the

beneficiary, whose income was being adjusted, was the starting

point for deciding when the assessment period expired.  Fendell

v. Commissioner, 92 T.C. 708 (1989), revd. 906 F.2d 362 (8th Cir.

1990).  Fendell involved a trust with two partnership investments

that resulted in losses.  The beneficiary reported a loss from

the trust.  The beneficiary's tax years were extended by

agreement.  Extensions were obtained from the trust for some of

its years, but not for the loss year.  After the expiration of

the assessment period for the trust's loss year, the Commissioner

mailed a notice of deficiency to the beneficiary disallowing his

claimed losses from the trust. The beneficiary contended that the trust's assessment period had expired and the Commissioner was barred from making the adjustments to the beneficiary's claimed loss.

On those facts, this Court held that the expiration of the trust's assessment periods did not bar the deficiency determinations for the beneficiary. That holding was based on our reasoning that the entity which was the source for the adjustment was a separate taxable entity (complex trust). The Court of Appeals for the Eighth Circuit reversed that holding using the rationale that the Commissioner can adjust the tax liability only at the source of income; i.e., the trust. Fendell v. Commissioner, 906 F.2d at 364.

Some Courts of Appeals distinguished Fendell, by limiting its application to situations where: (1) The source entity is recognized as a separate taxable entity, and (2) the Commissioner is indirectly attempting to adjust the entity's tax through the equity or beneficial owner after the statute prohibits a direct adjustment. See, e.g., Siben v. Commissioner, 930 F.2d 1034, 1038 (2d Cir. 1991), affg. T.C. Memo. 1990-435, where Fendell was held to be inapplicable because a partnership is not an entity taxable separately from the partners.

A similar holding by this Court concerning a passthrough

entity was reversed by the Court of Appeals for the Ninth Circuit. Kelley v. Commissioner, 877 F.2d 756 (9th Cir. 1989), revg. and remanding T.C. Memo. 1986-405. In that case, the court held that the Commissioner could not adjust a shareholder's return on the basis of an adjustment to an S corporation's return when the statute had run on the corporation's tax year.[9] The rationale underlying that appellate opinion was that the section 6501(a) 3-year period for assessment was to be applied at the "source entity" level (S corporation).

This Court and some Courts of Appeals agreed with the Commissioner's position that the relevant return for determining whether the period for assessment had expired under section 6501(a) is that of a taxpayer against whom the Commissioner has determined a deficiency. Fehlhaber v. Commissioner, 94 T.C. 863, 868 (1990) (S corporation), affd. 954 F.2d 653 (11th Cir. 1992); Bufferd v. Commissioner, T.C. Memo. 1991-170 (S. corporation), affd. 952 F.2d 675 (2d Cir. 1992), affd. 506 U.S. 523 (1993); Siben v. Commissioner, T.C. Memo. 1990-435 (partnership), affd. 930 F.2d 1034 (2d Cir. 1991); Green v. Commissioner, 963 F.2d 783 (5th Cir. 1992) (S corporation), affg. Brody v. Commissioner,

---

[9] Kelly v. Commissioner, 877 F.2d 756 (9th Cir. 1989), revg. and remanding T.C. Memo. 1986-405, was one in a line of cases in which taxpayers claimed losses with respect to their passthrough entity. These taxpayers had also extended the assessment period as to their individual returns, but no extensions had been obtained for the passthrough entities, whose assessment period(s) would have expired.

T.C. Memo. 1991-78; Lardas v. Commissioner, 99 T.C. at 492 (grantor trust).

The rationale generally underlying those holdings was that the assessment period of the beneficiary's/shareholder's/partner's return controlled, because: (1) The source entity was of a passthrough nature; (2) the source entity was not subject to income tax at the entity level; and (3) the return filed by the source entity did not contain enough information to determine the shareholder/taxpayer's total individual tax liability.

In Lardas v. Commissioner, 99 T.C. 490 (1992), however, this Court indicated disagreement with and an intention not to follow the Court of Appeals for the Eighth Circuit's holding in Fendell v. Commissioner, 906 F.2d 362 (8th Cir. 1990). In Lardas, we noted that we have consistently subscribed to the rationale that the return of the taxpayer against whom the Commissioner has determined a deficiency is the relevant return for purposes of section 6501(a) without regard to the nature of the source entity involved. Id. at 493.

C. Bufferd v. Commissioner

The Supreme Court specifically resolved the question of whether the passthrough entity's period for assessment controlled the Commissioner's ability to make determinations for individual taxpayer/shareholders. Bufferd v. Commissioner, 506 U.S. 523

(1993).[10]  As previously indicated, the Supreme Court also interpreted the term "return" in section 6501(a) to be the return of the taxpayer against whom the deficiency is determined or to be assessed.  Id. at 527.

Although the Bufferd opinion was not in the context of a shareholder and a C corporation, the following comments appeared in a footnote to that opinion:

> Petitioner additionally asserts that the returns of shareholders of a Subchapter C corporation cannot be adjusted after the limitations period has run for assessing the corporation's return, and that therefore S corporation shareholders are entitled to identical treatment. * * * However, petitioner has not provided a single authority in support of the premise of this assertion.  At oral argument, the Commissioner maintained that the opposite is the case, * * * relying mainly on Commissioner v. Munter , 331 U.S. 210, 67 S. Ct. 1175, 91 L.Ed. 1441 (1947), which, without addressing the limitations issue, allowed an adjustment of shareholders' 1940 taxes based upon the Commissioner's finding that, at the time of its creation by merger in 1928, the corporation had acquired the accumulated earnings and profits of its predecessor corporations.  A recent Tax Court decision also provides indirect support for the Commissioner's view:  "We have held that the relevant return for determining whether, at the time a deficiency notice was issued, the period for assessment had expired under section 6501(a) 'is that of petitioner against whom respondent has determined a deficiency.'  [Citing Fehlhaber, 94 T.C., at 868.]  We have maintained that position consistently, without regard to the nature of the source entity.  See [cases involving partnerships, trusts, and S corporations]." Lardas v. Commissioner, 99 T.C. 490, 493 (1992).  In any event, it is doubtful

---

[10]  The holding in Bufferd v. Commissioner, 506 U.S. 523 (1993), also resolved any question about whether the use of the term "return" in sec. 6037(a) and/or sec. 6012 results in the application of the assessment period at the entity level with respect to S corporations.

that petitioner's conclusion follows from his premise, for the taxation of C corporations and their stockholders is so markedly different from that of S corporations. [Id. at 532 n.11.]

The rationale expressed in the Bufferd footnote was relied upon in a memorandum opinion of this Court holding that the expiration of a C corporation's assessment period did not bar the Commissioner from determining a deficiency based on a deemed capital gain distribution to the shareholder. Manning v. Commissioner, T.C. Memo. 1993-127. In addition, the Court in Manning noted that Bufferd relied on Commissioner v. Munter, 331 U.S. 210 (1947), and Lardas v. Commissioner, 99 T.C. 490 (1992). The Manning opinion did not provide any rationale in addition to that contained in the cited cases.

Although prospective and not in effect for the tax year under consideration (1992), the Taxpayer Relief Act of 1997, Pub. L. 105-34, sec. 1284, 111 Stat. 1038, added the following language to section 6501(a):

> For purposes of this chapter, the term "return" means the return required to be filed by the taxpayer (and does not include a return of any person from whom the taxpayer has received an item of income, gain, loss, deduction, or credit).

That legislation was enacted after Bufferd, and was specifically intended to clarify this issue with respect to S corporations. H. Rept. 105-148, at 609-610 (1997), 1997-4 C.B. (Vol.1) 323, 931-932; S. Rept. 105-33, at 277-278 (1997), 1997-4 C.B. (Vol. 2) 1067, 1357-1358; H. Conf. Rept. 105-220, at 702-703 (1997), 1997-

4 C.B. (Vol. 2) 1457, 2172-2173. Under provisions entitled "Clarify statute of limitations for items from pass-through entities", the legislative history contains the explanation that the new language is intended to clarify that the return that starts the running of the statute of limitations for a taxpayer is the return of that taxpayer and not the return of another "person" from whom the taxpayer has received an item of income, gain, loss, deduction or credit. In that regard, section 7701(a)(1) defines "person" to mean and include "an individual, a trust, estate, partnership, association, company or corporation."

D. Petitioners' Arguments

Petitioners, in addition to arguing that the Bufferd v. Commissioner, supra, does not apply to situations involving C corporations, also argue that constructive dividends are analogous to section 6672 responsible person penalties. Under section 6672, assessments are generally to be made within 3 years of the filing of the return giving rise to the tax liability (entity's return).

We have held (in Manning v. Commissioner, supra) and hold here that the principle expressed in Bufferd v. Commissioner, supra, is not limited to S corporations or other flowthrough entities. We recognize that section 6672 cases hold that the assessment of responsible person penalties must be made within 3 years of the filing of the return giving rise to the

responsible person liability[11] but do not find that situation analogous or controlling with respect to the assessment of a shareholder's income tax on constructive dividend income.

The section 6672 penalty is used as a collection device by assessment of unpaid employment tax against an individual as a "responsible person". The particular employment taxes are those that had been collected from employees and, as such, are trust fund taxes in the employer's hands. Stallard v. United States, 12 F.3d 489, 493 n.6 (5th Cir. 1994). Accordingly, while the assessment of responsible person penalties is separate for purposes of collection, the underlying tax liability for a section 6672 assessment is the same liability as the employer's. Since the assessment is "based on" the underlying liability of the employer, the filing of the employer's employment tax return triggers the period of limitation applicable to the penalty.

In contrast, a C corporation's income tax liability on its net income (i.e., income less deductions) is separate and distinct from the shareholder's income tax liability on dividend income received from it. Secs. 1, 11, 301; see also InverWorld, Ltd. v. Commissioner, 98 T.C. 70, 82 (1992); S-K Liquidating Co. v. Commissioner, 64 T.C. 713, 716-718 (1975). It follows that

---

[11] See Jones v. United States, 60 F.3d 584, 589 (9th Cir. 1995); Stallard v. United States, 12 F.3d 489, 493 (5th Cir. 1994); Howard v. United States, 868 F. Supp. 1197, 1200 (N.D. Cal. 1994).

the shareholder's liability is not "based on" the underlying tax liability of the corporation as is an assessment against a responsible person under section 6672. Therefore, the corporation's return does not commence the section 6501 period of assessment applicable to the dividend income received by the shareholders.

Finally, adoption of a rule that the assessment period is controlled by the return of the taxpayer against whom an assessment may be made is a functional solution to the question posed by the parties. That approach satisfies the need for administrative economy and the goal of finality inherent in section 6501(a). It is also in accord with the legislative history to the post-1997 changes to section 6501(a). A shareholder-level period for assessment relieves administrative burdens and the difficulty taxpayers could encounter in not knowing whether the return of another taxpayer might bear on the period of limitations.[12] Ratto v. Commissioner, 20 T.C. 785, 789-790 (1953); Masterson v. Commissioner, 1 T.C. 315, 324 (1942), revd. on other grounds 141 F.2d 391 (5th Cir. 1944). Uncertainty

---

[12] To hold otherwise could result in situations where the Commissioner would have less than the 3 years provided for in sec. 6501(a) for a shareholder of a C corporation whose taxable year ended earlier than the shareholder's. It could also result in a situation where a taxpayer's exposure would be involuntarily extended beyond the normal 3 year period, if the source entity agreed to extend its assessment period for the parallel tax period.

regarding the correct period of limitations may hinder the resolution of factual and legal issues and create needless litigation over collateral matters.  H. Rept. 105-148, supra at 609-610, 1997-4 C.B. (Vol. 1) at 931-932; S. Rept. 105-34, supra at 277-278, 1997-4 C.B. (Vol. 2) at 1357-1358.

E.  Conclusion

We hold that the Robinsons' period for assessment controls the question of whether respondent is barred from making a determination that the Robinsons have constructive dividends. Accordingly, respondent was not time barred from determining constructive dividends for the Robinsons' 1992 tax year. Petitioners have offered no other evidence or defense with respect to the disputed constructive dividends, and therefore respondent is sustained on that adjustment.

II.  Self-Employment Income

On their 1992 and 1993 returns, the Robinsons reported $31,015 in each year as "other income" from discharge of indebtedness.  Respondent determined that the $31,015 reported in 1992 and in 1993 was income from self employment, resulting in the determination of self-employment taxes of $5,928 and $4,383 for 1992 and 1993, respectively.  On brief, the Robinsons contend that the amounts represent compensation or wages which are not

subject to self-employment tax.[13]  The Robinsons contend that they were officers and employees of Career and, as such, were not subject to self-employment tax.

Section 1401(a) imposes tax on a taxpayer's self-employment income.  The tax is imposed on the gross income derived by an individual from any trade or business carried on by the individual, less deductions.  The term "trade or business" in section 1402 has the same meaning as it does for purposes of section 162.  Sec. 1402(c).  The carrying on of a trade or business for purposes of self-employment tax generally does not include the performance of services as an employee.  Sec. 1402(c)(2).  Section 1402(d) references section 3121 (relating to the Federal Insurance Contributions Act) for the definition of the term "employee", as follows:  (1) Any officer of a corporation; or (2) any individual who, under the usual common law rules applicable in determining the employer-employee

---

[13]  We note that the Robinsons have not shown that there was a factual predicate for reporting discharge of indebtedness income; i.e., they have not shown the identity of the creditor, the amount and terms of the indebtedness, or the cancellation event.  The existence of a debtor-creditor relationship is a necessary predicate to a finding of cancellation of indebtedness income.  Millar v. Commissioner, 540 F.2d 184, 186 (3d Cir. 1976).

On brief, the Robinsons argue that they received the income as employees of Career and not self-employed individuals.  Even though the Robinsons reported the income as being from discharge of indebtedness, respondent does not argue that the Robinsons' reporting position prohibits their now claiming the amounts to be compensation.  Respondent contends that the income is compensation from self-employment.

relationship, has the status of an employee. Sec. 3121(d)(1) and (2). Applicable regulations concerning corporate officers provide:

> Generally, an officer of a corporation is an employee of the corporation. However, an officer of a corporation who as such does not perform any services or performs only minor services and who neither receives nor is entitled to receive, directly or indirectly, any remuneration is considered not to be an employee of the corporation. * * * [Sec. 31.3121(d)-1(b), Employment Tax Regs.]

An officer who receives remuneration for substantial services rendered to the corporation is considered an employee within the meaning of section 3121(d). Van Camp & Bennion v. United States, 251 F.3d 862 (9th Cir. 2001); Spicer Accounting, Inc. v. United States, 918 F.2d 90, 93 (9th Cir. 1990). With regard to the remuneration, it may be received directly or indirectly, but the relevant factor is whether the payments are received for services rendered. Spicer Accounting, Inc. v. United States, supra at 93; Automated Typesetting, Inc. v. United States, 527 F. Supp. 515, 522 (E.D. Wis. 1981).

Respondent argues that the Robinsons treated themselves as self-employed by virtue of the following factors: (1) They were not paid and did not report wages or other compensation from the corporation; (2) Mr. Robinson reported self-employment income from management services on a Schedule C, Profit or Loss From Business, in 1992 which respondent attributes to his work for Career; (3) the Robinsons managed the day-to-day operations and

dedicated significant time to running the company; and (4) they reported only small amounts of income from other sources. On these bases, respondent asserts that the Robinsons were carrying on a trade or business.

The fact that an individual did not receive remuneration in the form of wages or that the individual reported self-employment income (or other remuneration besides wages) on a Schedule C does not prevent the individual from being classified as an employee. Pariani v. Commissioner, T.C. Memo. 1997-427; Jacobs v. Commissioner, T.C. Memo. 1993-570. In addition, many of the facts upon which respondent relies in this case for the determination that Mr. and/or Mrs. Robinson were engaged in an independent trade or business also support the Robinsons' argument that each of them, as an officer or common law employee, provided significant services that were integral to the operation of the company.

Mr. Robinson was an officer of the corporation and its sole shareholder in 1992 and 1993. He provided substantial services to the corporation in his capacity as an officer. Because of his expertise as a certified aircraft mechanic and pilot, he was involved in overseeing the day-to-day operation of the aircraft brokerage segment of Career's business. He was personally involved in the inspection, negotiation, and purchase of used aircraft and parts. He traveled extensively for this part of the

business.  He took part in the actual inspection of purchased aircraft and parts.  He worked a minimum of 60-70 hours a week for the company.  While he received no wages or other direct compensation as an officer during these years, both parties contend that the amounts reported on the returns as debt cancellation income were actually compensation.  Therefore, we find that Mr. Robinson's activities with the corporation come within the definition of those of an "employee" as set forth in section 3121(d)(1) and section 31.3121(d)-1(b), Employment Tax Regs.  See also Veterinary Surgical Consultants, P.C. v. Commissioner, 117 T.C. ___, ___ (2001) (slip op. at 7-9).

In addition, Mr. and Mrs. Robinson fit within the definition of common law employees under section 3121(d)(2).  In determining whether an individual is an employee, the Court of Appeals for the Ninth Circuit has traditionally considered several factors, including:  Whether the business furnishes the worker with tools and a place to work; whether the work is performed in the course of the individual's business rather than in some ancillary capacity; and whether the services constituted an integral part of the taxpayer's business and are not incidental to the pursuit of a separately established trade or business.  Spicer Accounting, Inc. v. United States, supra at 94.  Other relevant factors to which the courts have looked in determining the substance of the employment relationship are the following:  (1)

The degree of control exercised by the principal over the details of the work; (2) which parties invest in the facilities used in the work; (3) the opportunity of the individual for profit or loss; (4) whether the principal has the right to discharge the individual; (5) whether the work is part of the principal's regular business; (6) the permanency of the relationship; and (7) the relationship the parties believe they are creating. Simpson v. Commissioner, 64 T.C. 974, 984-985 (1975) (and cases cited therein); Steffens v. Commissioner, T.C. Memo. 1984-592. No one factor is controlling. Where a sole shareholder controls and provides services to the corporation the element of control becomes less relevant. Jacobs v. Commissioner, supra; Rev. Rul. 71-86, 1971-1 C.B. 285.

As explained supra, Mr. Robinson was involved in the day-to day operations of the aircraft brokerage business. Mrs. Robinson was involved in the day-to-day administrative details of Career. Mrs. Robinson, along with two others, prepared corporate checks and coded them for posting to the general ledger. She was also responsible for marketing. Significantly, Mrs. Robinson was the primary dispatcher for the freight and passenger charter activities, including the coordination and readying of the planes and crew for the freight and charter businesses. Although Mrs. Robinson was also the property manager for their significant real

estate activity, she nonetheless devoted significant time and effort to her Career responsibilities.

The Robinsons were provided with tools and work space by Career, and both performed their services predominantly for the company. The Robinsons were regularly involved in the day-to-day business operations of Career. See <u>Simpson v. Commissioner</u>, <u>supra</u>. In addition, the Robinsons were integral to the operation of the company, and together they made fundamental decisions regarding its operation. See <u>Spicer Accounting, Inc. v. United States</u>, 918 F.2d at 94. Accordingly, we hold that the Robinsons were employees of the corporation and not subject to self-employment tax for their 1992 and 1993 tax years.

## III. Accuracy-Related Penalties

Respondent determined accuracy-related penalties for the substantial understatement of tax under section 6662(b)(2) and (d) with respect to the Robinsons for years 1992 and 1993, Career for its fiscal years ending July 31, 1993 and 1994, and Pak West for its tax year ending September 30, 1994.

For the periods under consideration, petitioners must show that respondent's section 6662 determinations are erroneous. Rule 142(a). Petitioners assert that many of the income and expense adjustments respondent determined have been reduced by agreement of the parties. Petitioners also argue that, to the extent that their corporate records are inadequate, it was

because of respondent's agent's advice that the period for assessment of Career's tax for its 1992 fiscal year had expired. The testimony of petitioners' certified public accountant does not support petitioners' claim that respondent's agent is in any way responsible for petitioners' being subject to the determined penalties.  Other than those assertions, petitioners have not presented any evidence or made any other showing as to why respondent's penalty determinations are in error.  Although a Rule 155 computation will be necessary to determine the penalty amounts, if any, for each petitioner, we hold that petitioners have failed to show that respondent erred in determining any of the section 6662(a) penalties.

To reflect the foregoing,

Decisions will be entered

under Rule 155.