T.C. Memo. 2005-256

UNITED STATES TAX COURT

EDWARD W. AND EDITH M. ARNOLD, ET AL.,[1] Petitioners v.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket Nos. 13292-03, 13293-03,   Filed October 31, 2005.
            1096-04.

Edward W. Arnold and Edith M. Arnold, pro se.

Thomas J. Travers and Kelley A. Blaine, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

COLVIN, Judge:  Respondent determined deficiencies in
petitioners' income tax of $3,038 for 1999, $3,178 for 2000, and
$27,549 for 2001 and accuracy-related penalties under section

---

[1]  The cases of the following petitioners are consolidated
for trial, briefing, and opinion:  Edward & Edith M. Arnold,
docket No. 13293-03, and Edward & Edith M. Arnold, docket No.
1096-04.

6662(a) of $607.60 for 1999, $635.60 for 2000, and $69,217.40 for 2001.

After concessions,[2] the issues for decision are:

1.   Whether petitioners may deduct losses from Western Timber Farms, Inc., for 1999, 2000, and 2001.  We hold that they may not.

2.    Whether petitioners are liable for self-employment tax for 2001.  We hold that they are.

3.   Whether petitioners may deduct $28,067 in expenses for "leased payroll" for 2001.  We hold that they may not.

4.   Whether petitioners are liable for accuracy-related penalties under section 6662(a) for 1999, 2000, and 2001.  We hold that they are.

FINDINGS OF FACT

A.   Petitioners

Petitioners resided in Portland, Oregon, when they filed their petition.  In 1999, 2000, and 2001, Edward W. Arnold (Mr. Arnold) was an accountant and Edith M. Arnold (Mrs. Arnold) was a real estate agent.  Mr. Arnold has been suspended from practice before the Internal Revenue Service since 1981.

---

[2]  At trial, respondent reduced the claim for the accuracy-related penalty under sec. 6662(a) to $5,509.80 for 2001.

Section references are to the Internal Revenue Code as amended and in effect for the years in issue.  Rule references are to the Tax Court Rules of Practice and Procedure.

B.    Western Timber Farm, Inc.

Petitioners organized Western Timber Farm, Inc. (Western), on February 4, 1993.  Petitioners alternately served as president of Western during the years in issue.

On April 20, 1993, Mrs. Arnold signed a Form 2553, Election by a Small Business Corporation, for Western in which she stated that Western wanted to adopt a tax year ending January 31.  Mrs. Arnold stated on the form that the year ending January 31 was Western's natural business year as provided in Rev. Proc. 87-32, secs. 4.01 and 4.02(a), 1987-2 C.B. 396, 399.[3]

In a letter to Western dated February 12, 1996, respondent acknowledged receipt of the Form 2553 and stated that the acknowledgment was not an acceptance of the election.  In a letter to petitioners dated December 21, 1998, respondent said that Western's S corporation election was not valid.  In a letter to respondent dated July 28, 1999, Mr. Arnold protested respondent's denial of Western's S corporation election and argued that Western was entitled to adopt a fiscal year ending January 31.

In a letter to Mr. Arnold dated March 19, 2001, respondent stated that respondent had reviewed Western's Form 1120S, U.S. Income Tax Return for an S Corporation, for 1998.  According to

---

[3] Rev. Proc. 87-32, 1987-2 C.B. 396, was in effect in 1999 and 2000.  It was superseded by Rev. Proc. 2002-38, 2002-1 C.B. 1037, effective for tax years ending on or after May 10, 2002.

that form, Western's 1998 tax year ended on November 30, 1998. In the March 19, 2001, letter, respondent stated that Western was not an S corporation. In a letter to Mrs. Arnold dated June 5, 2002, respondent noted that Western had filed an S corporation return for 1999 even though respondent told petitioners before they filed that return that Western did not qualify as an S corporation. In that letter, respondent referred to two revenue rulings which provide relief to some corporations which make a late S corporation election or an inadvertent termination. Respondent asked petitioners to respond if they believed that Western qualified under either revenue ruling.

In a letter to the Taxpayer Advocate Service dated December 26, 2003, Mr. Arnold asserted that petitioners' original S corporation election for Western was valid.

C.  Mr. Arnold's Accounting and Tax Preparation Activities and Pacific Controller, Inc.

On a date not stated in the record, Mr. Arnold organized Pacific Controller, Inc. (Pacific), an S corporation he owned. During the years in issue Pacific used Controller International, Inc.'s employer identification number. Controller International, Inc., is the same entity as or the predecessor entity to Pacific. The last tax return filed by Pacific was for a tax year ending January 31, 1997.

Mr. Arnold assigned to Pacific the payments he received from customers for his personal accounting services. Pacific has

never paid wages or a salary to Mr. Arnold.  Petitioners treated all of the amounts distributed to Mr. Arnold from Pacific as loans.  Mr. Arnold signed a promissory note in the amount of the balance due at the end of each year.  Pacific did not withhold payroll taxes on payments to Mr. Arnold.  Petitioners reported $41,544 of income as flowthrough from Pacific on the Schedule E, Supplemental Income and Loss, attached to their Form 1040, U.S. Individual Income Tax Return, for 2001.

D.    Mrs. Arnold's Real Estate Activities and Edith Arnold, P.C.

Mrs. Arnold held a license to sell real estate in 2000 and 2001.  In those years, Mrs. Arnold was a real estate agent for the Coldwell Bank Barbara Sue Seal Agency (Seal), a real estate brokerage.  Mrs. Arnold signed a Form W-9, Request for Identification Number and Certification, on January 10, 1999, and wrote on the bottom of the form:  "Please do not issue a 1099 for me."

Seal and Mrs. Arnold signed an addendum to an independent contractor agreement on October 30, 2000, and another independent contractor agreement in January 2001.  Seal made payments to Mrs. Arnold in her name.

Edith Arnold, P.C. (EAPC), is an S corporation owned by Mrs. Arnold and incorporated on a date not stated in the record.  Mrs. Arnold was president of EAPC.  Mrs. Arnold assigned the commissions and income she received from Seal to EAPC during the

years EAPC existed, including 2001.  EAPC has never paid wages or a salary to Mrs. Arnold.  Petitioners treated amounts EAPC distributed to Mrs. Arnold as loans from EAPC.  Mrs. Arnold signed a promissory note in the amount of the balance due at the end of each year.  EAPC did not withhold payroll taxes on any payments to Mrs. Arnold.

E.    Petitioners' Income Tax Returns

Mr. Arnold prepared the income tax returns for petitioners, Western, EAPC, and Pacific.  Western reported its income and expenses on the basis of a taxable year ending November 30 for the years ending in 1994-2000.  EAPC reported $65,509 of income from trade or business activities for the fiscal year ended January 31, 2001.

Petitioners' tax years ended on December 31.  On their individual income tax returns for 1999, 2000, and 2001, petitioners deducted nonpassive S corporation losses from Western of $10,093 for 1999, $10,579 for 2000, and $14,544 for 2001. Petitioners reported $65,509 of income from EAPC on the Schedule E attached to their Form 1040 for 2001.

On their Form 1040 for 2001, petitioners reported on Schedule E, Part I, Income from Rental Real Estate and Royalties, income from "leased payroll" of $17,995.  Petitioners deducted in Part I of Schedule E a total of $28,067, consisting of $3,200 for repairs and improvements, $10,471 for interest expense, and

$14,396 for labor.  Petitioners subtracted $28,067 from $17,995

of income and reported a loss of $10,072 for that activity.

OPINION

A.  Whether Petitioners May Deduct Losses From Western in 1999,
    2000, and 2001

1.  Petitioners' Contentions and Background

Petitioners contend that (1) they properly elected S

corporation status for Western, (2) Western was an S corporation,

(3) they substantiated the losses they deducted, (4) respondent

erroneously determined before 1999 that Western's S corporation

election was invalid, and (5) they may deduct Western's losses

for 1999, 2000, and 2001.[4]  We disagree.

An election of a corporation to be an S corporation under

sections 1361(a) and 1362(a)(1) must be complete, properly filed,

and made in accordance with regulations prescribed by the

Secretary.  Sec. 1377(c); Pestcoe v. Commissioner, 40 T.C. 195,

197 (1963).  A corporation electing S corporation status must

file a properly completed Form 2553 containing the information

required by that form.  Sec. 1.1362-6, Income Tax Regs.

---

[4]  Respondent's determination is presumed to be correct and
petitioners bear the burden of proof on all issues in this case.
See Rule 142(a)(1); Welch v. Helvering, 290 U.S. 111, 115 (1933).
Petitioners do not contend that respondent bears the burden of
proof under sec. 7491(a).  However, respondent bears the burden
of production under sec. 7491(c) as to the accuracy-related
penalty under sec. 6662(a).

2.  Whether Western Used a Permitted Tax Year

An S corporation may use only a permitted year as its taxable year.  Sec. 1378(a).  A permitted year is a year ending December 31, or any other accounting period for which the corporation establishes a business purpose to the satisfaction of the Secretary.  Sec. 1378(b).

Western stated in its S corporation election that a tax year ending January 31 was its natural business year as provided in Rev. Proc. 87-32, secs. 4.01 and 4.02(a).  Rev. Proc. 87-32, supra, provides a procedure under which a corporation electing S corporation status may have a tax year ending on a date other than January 31 that coincides with its natural business year.  Generally, a 12-month period is a taxpayer's natural business year if at least 25 percent of the gross receipts of the enterprise are regularly earned in the last two months of the annual period.  Id.

A taxpayer cannot establish a natural business year under Rev. Proc. 87-32, sec. 4.01(1)(d), if the taxpayer (and any predecessor organization) has not had gross receipts for a period of at least 47 months.  Petitioners did not offer evidence showing the amount of Western's gross receipts from sales and services for any period.  Thus, petitioners have not established that Western may use a tax year other than a calendar year.  We

conclude that Western did not use a permitted year as defined in section 1378(b) for any year before or during the years in issue.

### 3.   Whether Western Is an S Corporation

Petitioners contend that under Rev. Proc. 97-48, 1997-2 C.B. 521, Western was an S corporation during the years in issue because Western followed procedures required to qualify as an S corporation, including filing Forms 1120S for 1994-2002.  We disagree.  Corporations which file a late election for S corporation status may be eligible for relief under Rev. Proc. 97-48, supra.  As previously discussed, Western failed to qualify as an S corporation because it did not use a tax year permitted under section 1378(a), not because it filed its S corporation election late.  Thus, Western is not eligible for relief under Rev. Proc. 97-48, supra.

Petitioners contend that respondent failed to act on their election of S corporation status for Western and that this failure resulted in deemed approval.  We disagree that respondent failed to act.  By letter to petitioners dated December 21, 1998, respondent stated that respondent had rejected S corporation status for Western before the returns for the years in issue were due.

### 4.   Whether Petitioners Substantiated Their Claimed Flowthrough Losses From Western

Petitioners contend that they substantiated the amounts of Western's losses they deducted (as flowthrough) on their income

tax returns for 1999, 2000, and 2001.  We disagree.  Petitioners offered no evidence substantiating Western's losses.

5.    Conclusion

Petitioners may not deduct any losses from Western in 1999, 2000, and 2001.

B.    Whether Petitioners Are Liable for Self-Employment Tax for 2001 on Income From Their Accounting and Real Estate Activities

1.    Contentions of the Parties and Background

Petitioners contend that they are not liable for self-employment tax for 2001 because they performed services as employees of their respective corporations in 2001.  Respondent contends that petitioners improperly assigned their personal service income to their S corporations in 2001 and thus the income at issue was petitioners' income from self-employment in 2001.

The tax on income from self-employment is imposed on net earnings of $400 or more derived by an individual from a trade or business.  Sec. 1402(a) and (b); sec. 1.1401-1(c), Income Tax Regs.; see also Parrish v. Commissioner, T.C. Memo. 1997-474, affd. 168 F.3d 1098 (8th Cir. 1999).  The performance of services as an employee is generally not subject to self-employment tax.  Sec. 1402(c)(2) and (3).

2.  Whether Petitioners Improperly Assigned Income From Accounting and Real Estate Services to Their Corporations

Petitioners contend that they did not improperly assign Mr. Arnold's accounting income to Pacific and Mrs. Arnold's real estate commissions to EAPC.  Petitioners contend that their corporations earned that income.  Petitioners contend that the income at issue is not taxable to them under the assignment of income doctrine because the income was earned by their validly organized and operated corporations.  We disagree.

The existence of a validly organized and operated corporation does not preclude taxation of income to the service provider instead of the corporation.  Wilson v. United States, 530 F.2d 772, 777-778 (8th Cir. 1976), Haag v. Commissioner, 88 T.C. 604, 610-611 (1987), affd. without published opinion 855 F.2d 855 (8th Cir. 1988); see also Commissioner v. Culbertson, 337 U.S. 733, 739-740 (1949).  Deciding whether the corporation or the service provider earned the income requires that we decide whether the corporation or its service-performing agent or shareholder controls the earning of the income.  Johnson v. Commissioner, 78 T.C. 882, 891 (1982) (and cases cited therein), affd. without published opinion 734 F.2d 20 (9th Cir. 1984).

A corporation earns the income if:  (a) The service provider is an employee of a corporation which has the right to direct or control that employee in some meaningful sense; and (b) there

exists a contract or similar arrangement between the corporation and the person or entity using the services which recognizes the corporation's right to direct or control the work of the service provider.  Haag v. Commissioner, supra at 611; Johnson v. Commissioner, supra at 891; see also Leavell v. Commissioner, 104 T.C. 140, 151-152 (1995).  We discuss these requirements next.

<blockquote>

a.      Whether Petitioners Were Employees of Their Corporations
</blockquote>

Petitioners were employees of their corporations because they were officers of those corporations.  See secs. 3121(d)(1), 1401, 1402; Robinson v. Commissioner, 117 T.C. 308, 320-322 (2001).

<blockquote>

b.      Whether Contracts Existed Between Petitioners and Their Corporations Recognizing the Rights of the Corporations To Direct or Control Their Performance of Services
</blockquote>

Petitioners make no argument on this point.  There is no evidence of a contract or similar arrangement between Mr. Arnold and Pacific or between Pacific and its clients.  Thus, petitioners have not shown that Pacific controlled Mr. Arnold's performance of services.

Similarly, there is no evidence that Mrs. Arnold contracted with her corporation to perform real estate services or that EAPC contracted with clients to perform real estate services.  The contracts between Mrs. Arnold and Seal and Seal's records with respect to Mrs. Arnold's real estate sales and commissions show

that Seal paid Mrs. Arnold, not EAPC.  We conclude that EAPC did not control Mrs. Arnold's performance of real estate services.[5]

### c.   Conclusion

We sustain respondent's determination that petitioners are subject to self-employment tax in 2001 on income from their accounting and real estate activities.

## C.   Whether Petitioners' Tax Treatment of "Leased Payroll" Is Correct

### 1.   Whether the $17,995 of "Leased Payroll" Income That Petitioners Reported on Their 2001 Return Is Self-Employment Income

Mr. Arnold testified that:  (a) He personally obtained and contracted with employees and independent contractors to provide services to Pacific; (b) he charged Pacific 25 percent more than the workers were paid; and (c) the 25 percent difference was rental income to him and not subject to self-employment tax.

Generally, income from the rental of property is not self-employment income.  Sec. 1402(a)(1).  Petitioners reported that they received $17,995 of "leased payroll income" as rental income.  Petitioners contend that the $17,995 of "leased payroll income" is not self-employment income.  We disagree.

Mr. Arnold's testimony establishes that the $17,995 that petitioners reported as leased payroll income:  (a) Was not

---

[5] We do not consider respondent's argument based on Mrs. Arnold's Web site because evidence about the Web site is not from 2001.

income from real estate rentals; and (b) was derived from Mr. Arnold's personal services. Thus, petitioners received $17,995 in self-employment income that Pacific paid to Mr. Arnold in 2001 for labor provided by Mr. Arnold. We sustain respondent's determination that the $17,995 that petitioners reported as leased payroll income is self-employment income.

2. Whether Petitioners May Deduct $28,067 As Leased Payroll Expenses

Petitioners contend that they may deduct the following $28,067 in expenses related to their leased payroll activity: (a) $14,396 for labor; (b) $10,471 for interest; and (c) $3,200 for repairs and improvements. We disagree for reasons stated below.

a. Labor Expenses

Petitioners contend that Mr. Arnold paid $14,396 for labor in 2001. Petitioners rely on Forms W-2, Wage and Tax Statement, and Forms 1099-MISC, Miscellaneous Income, showing payments made to various individuals in 2000. A taxpayer may deduct ordinary and necessary expenses paid or incurred during the taxable year in carrying on any trade or business. Sec. 162(a).

The forms have several different employer identification numbers (EIN), none of which match petitioners' Social Security numbers. The forms do not show that either petitioner paid $14,396 for labor or that the payments relate to Mr. Arnold's leased payroll activity. Petitioners do not explain why 2000

expenses are deductible for 2001.  Petitioners may not reduce the $17,995 received in 2001 by amounts they claim to have paid for labor.

### b.    Interest Expense

Petitioners reported interest income totaling $10,491 for 2001 as follows:  (1) $1,253 from Western; (2) $7,387 from EAPC; (3) $1,831 from Pacific; and (4) $20 from "other".  Petitioners contend that they had interest expenses in that amount.  We disagree.  The interest was not an expense of petitioners if it was paid to them by their S corporations.  Statements in a tax return are admissions and are not overcome without cogent evidence that they are wrong.  Waring v. Commissioner, 412 F.2d 800, 801 (3d Cir. 1969), affg. per curiam T.C. Memo. 1968-126; Estate of Hall v. Commissioner, 92 T.C. 312, 337-338 (1989); Lare v. Commissioner, 62 T.C. 739, 750 (1974), affd. without published opinion 521 F.2d 1399 (3d Cir. 1975).  There is no evidence that petitioners had $10,471 of interest expenses in 2001.

Petitioners' Schedule B is inconsistent with their claim for a $10,471 interest deduction because it states that petitioners' corporations paid $10,471 to petitioners.  Thus, Mr. Arnold did not make these interest payments, and apparently, these payments do not relate to Mr. Arnold's leased payroll activity.

### c. Repairs and Improvements

Petitioners contend that they may deduct from the $17,995 amount $3,200 for repairs and improvements. We disagree. Petitioners have failed to show that they paid those amounts or that those amounts were ordinary and necessary expenses of Mr. Arnold's leased payroll activity.[6]

### d. Conclusion

Petitioners have not shown that they are entitled to deduct any amount from the $17,995 they received from Pacific because of Mr. Arnold's leased payroll activity.

## D. Whether Petitioners Are Liable for the Accuracy-Related Penalty

Petitioners contend that they are not liable for the accuracy-related penalty under section 6662(a) because they

---

[6] In their reply brief, petitioners request that we reopen the record to admit into evidence (1) documents stating that they paid $3,200 for repairs and improvements and (2) schedules relating to their claims of double taxation of income, illegal seizures, and failure to issue refunds.

A court generally will not reopen the record unless the evidence relied on probably would change the outcome of the case. Butler v. Commissioner, 114 T.C. 276, 287 (2000). The documents stating that petitioners paid $3,200 for repairs and improvements would probably not change the outcome of these cases because they do not purport to show that they were ordinary and necessary expenses of Mr. Arnold's leased payroll activity. The schedules probably would not change the outcome of these cases because the data in the schedules is uncorroborated. Petitioners do not explain why they did not offer these documents into evidence at trial. It is not appropriate to reopen the record under these circumstances.

followed regulations and procedures when preparing records and the returns at issue in these cases. We disagree.

### 1. Burden of Production

Section 7491(c) places on the Commissioner the burden of producing evidence that it is appropriate to impose a particular penalty. To meet that burden, the Commissioner need not produce evidence relating to defenses such as reasonable cause or substantial authority. Higbee v. Commissioner, 116 T.C. 438, 446 (2001); H. Conf. Rept. 105-599, at 241 (1998), 1998-3 C.B. 747, 995. Once the Commissioner meets the burden of production, in order to not be found liable for the penalty the taxpayer must produce evidence showing that the Commissioner's determination is incorrect. Higbee v. Commissioner, supra at 447.

Respondent has met the burden of production under section 7491(c) with respect to the accuracy-related penalty under section 6662(a) by showing: (a) Western did not report its income on a permitted tax year; (b) respondent notified petitioners in writing that Western was not an S corporation; (c) petitioners disregarded statutes and the regulations thereunder in claiming losses from Western for 1999, 2000 and 2001; (d) petitioners performed personal services and claimed that their corporations earned the income received for personal services provided for tax year 2001; and (e) Mr. Arnold and not Pacific earned the $17,995 that petitioners reported as leased payroll

income on their 2001 return and that the $17,995 is self-employment income.

    2. <u>Whether Petitioners Have Shown They Were Not Negligent</u>

Petitioners argue that they were not negligent because they are correct on the merits of this case and they followed the Secretary's regulations and procedures. We disagree. As discussed above, we conclude that petitioners are incorrect on the merits of this case. Petitioners did not comply with Rev. Proc. 87-32, 1987-2 C.B. 396. Petitioners make no argument and offered no evidence to show that they had reasonable cause. We conclude that petitioners are liable for the accuracy-related penalty under section 6662(a) for 1999, 2000, and 2001.

To reflect concessions and the foregoing,

<u>Decisions will be entered under Rule 155</u>.